**STATE of Missouri, Respondent,**

v.

**Lettie L. WARD, Appellant.**

**No. 69345.**

Supreme Court of Missouri,
En Banc.

Feb. 17, 1988.

Rehearing Denied March 15, 1988.

John Edward Cash, Williard B. Bunch, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Appellant was convicted by jury of six counts of abuse of a child and sentenced to a total of 12 years imprisonment. Section 568.060, RSMo Cum.Supp.1984. Appellant presents five allegations of error including a challenge to the validity of section 210.-140, RSMo 1986. Affirmed.

Appellant was employed by the We Serve Humanity Day Care Center to do housekeeping, cleaning activities and to provide relief help with the children.

In March, 1985, it was discovered that there were a total of sixteen fractures among six children who attended this day care center. The children had no previous history of fractures. Drs. Joy Johnson, a pediatric radiologist, and Joyce Adams, a pediatric specialist, testified that the fractures were spiral fractures, very common in child abuse cases. Subsequently, in March 1985, Alvin Brooks, Director of the Kansas City, Missouri, Department of Human Relations, was asked by the Metropolitan Missouri Baptist Church and the We Serve Humanity Christian Academy to head an independent investigation of the incident. Brooks was a former police officer, 1954–1964, in the Kansas City Police Department. Brooks's team consisted of himself and two retired police detectives. Brooks cleared the investigation with the Jackson County Prosecuting Attorney and the police department.

Brooks interviewed each of the employees who had worked at the center during the time the fractures occurred. On May 5, 1985, Brooks talked with appellant at the International House of Pancakes where she had agreed to go. Brooks explained his role and asked appellant some questions. Brooks and appellant agreed to meet again on May 15, 1985, and he took her to dinner at Gates and Sons restaurant; appellant made incriminating admissions concerning the child abuse to Brooks. Appellant asked Brooks for help; she did not want to go to the police. Brooks took her home and due to her level of distress and upon agreement with appellant and her aunt, took appellant to the Western Missouri Mental Health Center where she was admitted. Nancy Taylor, a social worker, was the intake person on duty who interviewed appellant. She asked appellant if she was the person who hurt the children at the day care center, and appellant stated she was. Appellant was also seen by a licensed psychiatrist. Brooks informed the prosecutor of the information given him at Gates restaurant and the social worker at the beginning of the intake interview.

Appellant requested to see Mr. Brooks while at the Missouri Mental Health Clinic. He was advised by the Prosecuting Attorney to advise her of her rights and to make sure appellant understood what his role was and that she had the right to have an attorney present. Brooks informed appellant of his role, her right to an attorney and the importance of protecting her rights. He did not question her about the child abuse incident.

Appellant was charged by indictment on April 4, 1986, with six counts of child abuse, a class D felony at the time the offenses were alleged to have occurred.

Appellant charges the court erred when it admitted evidence of the incriminating statements made by her to Mr. Brooks and Ms. Taylor. Appellant argues Brooks was acting as an arm of the prosecution when he conducted the conversation with her at Gates restaurant and that a Miranda warning was therefore required but not given. Appellant argues the statement made to Ms. Taylor at the Western Health Clinic was a direct result of the statement given to Brooks and should have been excluded as the product of an illegally obtained confession.

The fifth amendment does not apply to the acts of private individuals absent

government participation. *U.S. v. Rose,* 731 F.2d 1337, 1345 (8th Cir.1984). When there is sufficient evidence in the record to conclude defendant's admissions are voluntary it is not error to admit these statements into evidence. *Id.*

■ Appellant was aware of Mr. Brooks's role in the independent investigation and that he would report any findings to the police and prosecutor. There was evidence to show she called Mr. Brooks and agreed to go with him to Gates restaurant. At the restaurant she was not in the custody of Mr. Brooks because she could leave at any time. Brooks testified that appellant initiated the conversation concerning the child abuse. Appellant voluntarily stated to Mr. Brooks that she injured the children in some manner she could not recall. When appellant became upset, Mr. Brooks took her home and then to Western Mental Health Hospital at her request.

■ Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the fourteenth amendment. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). Here, appellant was not in custody at any time when she went to Gates restaurant with Mr. Brooks; Brooks was not a police officer, although he was cooperating with government officials in some manner; appellant testified she admitted voluntarily to Mr. Brooks and Ms. Taylor that she injured the children; Brooks did not interrogate or coerce appellant to admit she injured the children. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694 (1966), operates only as to statements taken during a custodial interrogation by law enforcement officers and not as to response to a private citizen given free from restraint. *State v. Kelly,* 439 S.W.2d 487 (Mo.1969); *U.S. v. Delay,* 500 F.2d 1360, 1364 (8th Cir.1974). Miranda warnings were not required to be given to appellant by Mr. Brooks. Appellant's fifth amendment rights were not violated. Appellant's argument that the statement to Ms. Taylor should be suppressed because Brooks failed to give appellant Miranda warnings fails.

Appellant charges the court erred in admitting the statements made by appellant to Ms. Taylor because the statement was taken in the context of the physician-patient relationship. Appellant also claims 210.140, RSMo 1986, is unconstitutional to the extent it abrogates the physician-patient privilege in criminal prosecution for child abuse because it violates the fourteenth amendment to the Constitution of the United States by denying them an evidentiary privilege ordinarily extended to defendants on other, no less serious, charges.

Standards for social workers are found in section 337.505, RSMo 1986.[1] The standard for privileged communication is governed by section 337.540, RSMo 1986,[2] if the social worker is a licensed professional counselor. Privileged communications are not recognized for all professionals except those between attorney and client in cases of child abuse or neglect. Section 210.140, RSMo 1986.[3] This statute would cover the

1. **337.505. License required—exempted professions and occupations.**—No person shall use the title of "professional counselor" or engage in the practice of professional counseling in this state unless he is licensed as required by the provisions of sections 337.500 to 337.545. Sections 337.500 to 337.545 do not apply to:

\* \* \* \* \* \*

(16) Social workers, certified by an agent acceptable to the committee, or workers under their supervision so long as they are doing work consistent with their training and with a code of ethics of the social work profession, and so long as they do not use the title of "professional counselor"; ....

2. **337.540. Privileged Communications, when.**—Any communication made by any person to a licensed professional counselor in the course of professional services rendered by the licensed professional counselor shall be deemed a privileged communication and the licensed professional counselor shall not be examined or be made to testify to any privileged communication without the prior consent of the person who received his professional services, except in violation of criminal law.

3. **210.140. Privileged communication not recognized, exception.**—Any legally recognized privileged communication, except that between attorney and client, shall not apply to situations

statement made by appellant to Ms. Taylor independent of whether she was a licensed counselor and whether the statement made by appellant was in the context of the doctor-patient privilege.

■ The legislature has specifically chosen not to protect privileged communications between doctors, psychologists, and licensed counselors and their patients when the communication involves child abuse or neglect. Criminal cases are within the statute's scope, *State v. Brydon*, 626 S.W. 2d 443 (Mo.App.1981), as are civil cases, *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449 (Mo. banc 1984). This Court has stated, "[T]he number of reports of child abuse cases appearing in a multitude of publications indicate the problem [child abuse] has reached epidemic proportions and apparently the legislature has determined the deterrent value of tort judgments as well as other available sanctions are necessary to stem the rising tide." *State ex rel. D.M.*, 681 S.W.2d at 452. The physician-patient privilege has no constitutional underpinning and is statutory in origin. *State v. Carter*, 641 S.W.2d 54 (Mo. banc 1982). The legislature intended 210.140 to vitiate the physician-patient privilege in both civil and criminal actions for cases of child abuse and neglect. Appellant's argument that this statute violates the equal protection clause of the United States Constitution cannot stand because the legislature has a rational basis for enacting this legislation. This Court determined that the legislature, when enacting 210.140, intended to deal with the serious problem of child abuse. The privilege is statutory and what the legislature grants it can also modify or abolish. *Randolph v. Supreme Liberty Life Ins. Co.*, 359 Mo. 251, 221 S.W.2d 155 (Mo. banc 1949), as quoted in *State ex rel. D.M.*, 681 S.W.2d at 450. The legislature has acted within its power and abolished

this privilege in connection with child abuse and neglect cases.

Appellant charges instructions (5–10) on Counts I through VI were erroneous in that they did not include both means and result. Appellant contends because there was no direct proof of means the State cannot submit only that defendant fractured the leg, legs, or arm and legs of each victim. Appellant alleges she was prejudiced because the jury was allowed to find guilt based on the existing injuries alone without a means.

■ Giving or failing to give an instruction or verdict form in violation of this Rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined. Rule 28.02(e), V.A.M.R. 1987 Cum.Supp. To determine prejudice, the Court considers the facts and instructions together. *State v. Kimball*, 624 S.W. 2d 158, 159 (Mo.App.1981).

Appellant alleges that because MAI–CR 3d 322.12 leaves space to describe means and result, the omission of means and results beyond the term "fractured" constitutes prejudicial error. Appellant argues that there was not sufficient evidence for the State to make its charges of child abuse.

■ A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of offense charged. *State v. Krause*, 682 S.W.2d 55 (Mo.App.1984); *State v. Rodgers*, 641 S.W.2d 83 (Mo. banc 1982). Appellant was charged with violating section 568.060, RSMo Cum.Supp.1984,[4] abuse of a child. A representative instruction was No. 5:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required or permitted by section 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to sections 210.110 to 210.165, or to give or accept evidence in any judicial proceeding relating to child abuse or neglect.

4. **568.060. Abuse of a child.—1.** A person commits the crime of abuse of a child if he:
(a) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old, or....

First, that on or about March, 1985, in the County of Jackson, State of Missouri, the defendant fractured the legs of Darrius Pouncil, and

Second, that in so doing, defendant inflicted cruel and inhuman punishment upon Darrius Pouncil, and

Third, that Darrius Pouncil was then less than seventeen years old, and

Fourth, that defendant knew her conduct was inflicting cruel and inhuman punishment upon a child less than seventeen years old,

then you will find the defendant guilty under Count I of abuse of a child.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Evidence adduced at trial which consisted of expert witnesses, no prior history of fractures on any of the children, and appellant's own admissions, showed that the children were the victims of child abuse. Although it does not specifically describe the means used, the instruction contained all of the elements of abuse of a child, 568.060, so that the jury could have found that appellant was guilty of the offense charged. Appellant was not prejudiced by submission of Instructions 5–10 to the jury.

Appellant charges the court erred when it refused to permit psychiatrist Enrique Vera to testify. Appellant alleges the doctor's testimony was necessary to show that a person suffering from her type of mental disorder could have confessed to a crime she did not commit in order to end the stress of questioning. Appellant claims this testimony is relevant to the issues of the voluntariness of her admissions and the truthfulness of her subsequent denials.

The trial court found that the doctor's proffered testimony was not sufficient to rise to the level of expertise to assist the jury in arriving at its decision. The court stated that Dr. Vera's testimony "that it is possible" is not sufficient to be of assistance and does not rise to the level of expert testimony.

It is within the trial court's sound discretion whether to admit expert testimony. *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984). At the pretrial hearing Dr. Vera testified before the court and was questioned by both attorneys and extensively by the court as to appellant's mental condition at the time of her admissions to Mr. Brooks and Nancy Taylor. Dr. Vera's evaluation of appellant took place more than a year after the child abuse incidents and appellant's admissions. After questioning the court found that Dr. Vera's diagnosis would not assist the jury in determining whether the mental disorder had any effect on the truthfulness of appellant's admissions. Dr. Vera's testimony did nothing to aid the jury in finding the facts of the case beyond the normal duty to assess credibility and weigh the evidence. *State v. Sherman*, 637 S.W.2d 704 (Mo. banc 1982). The trial court did not abuse its discretion.

Appellant charges the court erred in overruling her objection to portions of the prosecution's closing arguments. Appellant argues that State's Exhibit 2, a work record of the day care center which showed appellant was alone with the children on March 11, 1985, did not satisfy the requirements for admission as a business record. Three of the sixteen fractures occurred on this day. Appellant also claims that the State did not use the record according to the stipulation that it was to show appellant worked at the day care center.

The stipulation reads:

It is hereby stipulated and agreed between the State of Missouri and the defendant, Lettie Ward, that the testimony of Marie Wesson as it relates to the employee records of the We Serve Humanity Day Care Center employees, including the defendant, will be admitted into evidence for your consideration.

Although courts will relieve parties from a stipulation under some circumstances, relief is never granted simply for the reason the case has gone contrary to the expectations of the stipulator. *State ex rel. Turri v. Keet*, 626 S.W.2d 422, 425 (Mo.App.1981),

*quoting State v. Allen,* 710 S.W.2d 912, 915 (Mo.App.1986).

 The prosecutor used this exhibit to cross-examine appellant on her work record and to introduce testimony that appellant had been alone in the infant section of the day care center on March 11, 1985. Appellant denied that she had ever been alone in the infant section, although earlier several parents testified that they had seen appellant alone in that section. Appellant was aware that this was an issue in the trial and the State was pursuing it. The stipulation does not refute this contention, but it was evidence the jury could consider in deciding whether appellant was ever alone in the infant care section. Appellant could have refuted this contention with countervailing evidence, but failed to do so.

 Appellant claims the State's closing argument was improper because it referred to State's Exhibit 2 and inferred that appellant was alone with the children on March 11, 1985. The trial court has broad discretion in controlling the scope of closing argument. *State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982). Exhibit 2 was properly admitted by stipulation. A prosecutor has the right to draw any inferences from the evidence which he believes in good faith to be justified. *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo.1982). There was testimony by the defendant that she was never alone with the children; parents testified they had seen appellant alone with them. Appellant was cross-examined concerning her work record, State's Exhibit 2, where it showed appellant could have been alone with the infants on March 11, 1985, because all the other employees that worked in that section had left for the day. The State is entitled to draw the appropriate inference from the evidence.

The judgment is affirmed.

All concur.