**STATE of Missouri, Respondent,**

v.

**Donald Eugene DALESKE, Appellant.**

**No. WD 47341.**

Missouri Court of Appeals,
Western District.

Nov. 2, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

R.E. Moulthrop, Bethany, for appellant.

Philip M. Koppe, Ronald L. Jurgeson, Asst. Attys. Gen., Kansas City, for respondent.

Before TURNAGE, C.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Donald Eugene Daleske was convicted by a Harrison County jury of forcible sodomy under § 566.060, RSMo Supp.1990, and was sentenced to a term of ten years imprisonment. Daleske appeals, raising two points. We reverse the judgment.

In his Point I, Daleske contends the information with which he was charged was deficient in that it failed to apprise him of the specific acts and conduct constituting the

crime with which he was charged. Since our decision on Point II is dispositive, it is unnecessary to address this issue.

■ In Point II, Daleske argues that the trial court erred in denying his motions for judgment of acquittal and motion for new trial for the reason that the record is wholly devoid of evidence supporting a finding of the use of "forcible compulsion," as required by § 566.060.[1] This contention goes to the sufficiency of the evidence. In reviewing such issue, the facts in evidence, as well as all inferences reasonably drawn therefrom, must be considered in the light most favorable to the verdict, and all evidence to the contrary must be disregarded. *State v. Clifford,* 815 S.W.2d 3, 5 (Mo.App.1991).

The information charged that Daleske "committed the felony of forcible sodomy . . . in that on or about or between January 1, 1990, and April 30, 1992, in the County of Harrison, State of Missouri, the defendant had deviate sexual intercourse with S.M., without the consent of S.M. by the use of forcible compulsion." "Forcible Compulsion" is defined in § 556.061(12), RSMo Supp.1990 as follows:

> (12) **"Forcible Compulsion"** means either:
> (a) Physical force that overcomes reasonable resistance; or
> (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person;

Daleske asserts there was no evidence whatsoever from which one could find the use of "Forcible Compulsion" as so defined; that forcible compulsion is an essential element of the offense charged; and therefore, the conviction cannot stand. The state points to the following evidence, summarized in the light most favorable to the verdict, as refuting Daleske's contention.

Daleske was the step-father of the victim, S.M., a female born February 25, 1975, age 17 at the time of trial. Daleske first began sexually abusing S.M. when she was approximately seven years old. S.M. was unable to recall specific dates, or acts, of sexual misconduct during her younger years. However, she recalled Daleske first causing her to perform fellatio on him by the time she was ten years old.

The incidents usually occurred in the morning. Daleske would tell S.M. the night before that he wished to spend time with her, which meant her going into his bedroom in the morning. If she failed to do so, he would come to her room, remind her that he wished to spend time with her, and thereafter she would go to his room. Once there, she would generally perform fellatio on him. During the last six months S.M. lived at home, approximately October, 1991, through April, 1992, the requests for visits to Daleske's room became more frequent, perhaps two to three times per week.

In addition, on at least one occasion, Daleske went into the bathroom while S.M. was drying off after a bath, picked her up, sat her on the sink, and performed cunnilingus on her. She objected and began to cry. Daleske told her it wouldn't hurt, that he loved her, and she would enjoy it.

The record further revealed that two days before the prom, S.M. requested permission from her mother to skip school so she could go to St. Joseph with friends. Her mother consented subject to Daleske's approval. Daleske said she would have to come to his room in the morning if she wanted to go. In an attempt to avoid doing so, she purposely overslept, thinking that she would have just enough time to get ready before her friends arrived to pick her up. Her plan failed, because Daleske told her to call her friends and tell them to pick her up later. He then had her come to his room, and remove her nightgown and underwear. He fondled her "private area" and had her perform fellatio on him. He then had her place a condom on him, and get on top of him and act like she was riding him. There was no penetration nor attempt thereat. After this incident,

1. **566.060. Sodomy**
1. A person commits the crime of sodomy if he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion.

S.M. did get to miss school and go with her friends.

On another occasion, S.M. and others were at school decorating for the prom. It was raining very hard when she was ready to leave and she called home to have someone pick her up because she did not want to drive in those conditions. Daleske did so, and on the way home, pulled over in an area where they could not be seen. He told her that since she had gotten him out in the rain and the cold, she should do something for him. He then unzipped his pants, removed his penis, took her head and guided her mouth to his penis so she could perform fellatio.

Not long afterward, Daleske told S.M. that if she would voluntarily come to his room at least twice a month, she would be free to come and go as she wished and would not have to answer to anyone. The next morning, she did come in, although he had to ask her to do so three or four times before she complied. He had her remove her night-gown and underwear and place a condom on his penis. He then had her get on top of him and act like she was riding him. As before, there was no penetration or attempt. When Daleske didn't ejaculate from this stimulation, he had her remove the condom and perform fellatio on him.

The evidence also revealed that when S.M. received a speeding ticket, she was told by her mother that she was grounded for two weeks. Daleske told her that if she would come to his room, she wouldn't be grounded. She refused, and Daleske then told her she was grounded for two months. Daleske's threat was never carried out, because S.M.'s mother stuck to the original punishment she had meted out.

■ In reviewing this point, the court neither weighs the evidence, nor determines the credibility or reliability of the witnesses. *State v. Middleton*, 854 S.W.2d 504, 506 (Mo. App.1993). We limit review to determining whether there is substantial evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). "Substantial evidence" is evidence from which the trier of fact reasonably can find the issue in harmony with the verdict. *State v. Martin*, 852 S.W.2d 844, 849 (Mo.App.1992).

■ In its brief, the State first argues that the evidence outlined above established that Daleske's various acts of sodomy were done with "physical force" that overcame "reasonable resistance."

We are referred to the victim's testimony regarding the incident in the car when Daleske took S.M.'s head and guided her mouth to his penis, and her testimony that Daleske had held her head on other occasions.

■ This evidence is insufficient to establish "physical force that overcomes reasonable resistance." Furthermore, this portion of the definition of "Forcible Compulsion," as defined in § 566.061(12)(a), was not submitted to the jury. The jury had before it only the definition provided in § 556.061(12)(b).

■ The State next argues that the evidence supports a finding that Daleske either expressly or by implication placed S.M. in reasonable fear of being kidnapped. The State directs our attention to § 565.110.1(4), RSMo 1986, which specifies that "A person commits the crime of kidnapping if he ... unlawfully confines another without his consent for a substantial period, for the purpose of ... (4) Facilitating the commission of any felony...." The State reasons that the evidence indicating that Daleske's threat to "ground" S.M. if she refused to comply with his sexual requests constituted a threat of "kidnapping" as previously defined.

It strains credulity to believe that a reasonable juror could find such evidence sufficient to find Daleske guilty beyond a reasonable doubt on this theory. The definition of § 565.110.1(4) is extremely legalistic, and highly technical, and it simply cannot be believed that a reasonable juror would have concluded based on the common understanding of the term "kidnapping" that the evidence supported such a finding. A parental threat to ground a child is not kidnapping.

Viewing the entire record in the light most favorable to the verdict, there is simply no evidence to support a finding that Daleske threatened S.M. so that she was "in reason-

able fear of death, serious physical injury[2] or kidnapping" as required by § 566.060 and § 556.061(12)(b). Therefore, Daleske's conviction must be reversed.

■ While we conclude there was no evidence of forcible compulsion, this is not to say that Daleske employed no compulsion. Indeed, the compulsion involved in introducing a child to these activities arises from the dependency and age of the child. Once the child has been drained of self-respect, compliance may tend to continue. However, this kind of compulsion, at least based on the evidence in this case, fails to attain the level contemplated by the definition of "forcible compulsion" in the statute.

On appeal, the state apparently recognized the potential for this result. In oral argument, it urged that if the court found the evidence insufficient to sustain the verdict, we should find that it was merely instructional error and remand for a new trial.

We can make no finding of instructional error in this case. Daleske was charged under § 566.060 with forcible sodomy in the information. Instruction No. 5, the verdict director submitted by the state and given by the court, properly instructed on that charge and was in the form of MAI–CR 3d 320.08.1. There was no instructional error. There was simply insufficient evidence to support the conviction.

We leave the question whether Daleske may be prosecuted for a different offense to the sound judgment of learned counsel for the state. A review of the recent decision of the Missouri Supreme Court in *State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993), may prove enlightening in considering the issue.

The judgment is reversed and Daleske is ordered discharged.

All concur.

---

2. "Serious physical injury" is defined in Section 556.061(28), RSMo 1986 as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."