**STATE of Missouri, Respondent,**

v.

**Richard THIELE, Appellant.**

No. 67481.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 29, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 17, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Richard Thiele ("defendant"), appeals the judgment of conviction entered by the Circuit Court of St. Charles County after a jury found him guilty of one count of attempted forcible sodomy, RSMo § 566.060.[1] We affirm.

1. All statutory references are to RSMo Supp.

The facts taken in the light most favorable to the verdict are as follows: On March 14, 1993, G.H. ("victim") received a phone call from a person identifying herself as Gloria Hill. Hill told victim she worked in the marketing department of a shoe company and was conducting a telephone survey. Because victim was in a sales-related business herself, she and Hill had a lengthy discussion covering various topics including marketing strategies and trade shows. Hill asked victim if she would like to be a shoe-model in an upcoming trade show, and victim indicated she would be interested. Victim was led to believe the trade shows were large family-oriented events. Hill also told victim she had a "side business" which involved modeling shoes for men privately wherein the men fantasized and derived sexual pleasure from watching. Victim firmly responded she had no interest in participating in Hill's "side business."

Hill contacted victim the following day and discussed a meeting involving Hill, victim, and another marketing person named Brad. Victim agreed and arrangements were made to meet the next day. Victim was to meet Hill at a fast-food restaurant and the two would then go together to meet Brad at a Wal–Mart in St. Peters. Victim was told to bring several pairs of her heeled shoes with her so the shoes could be "market analyzed" at the meeting.

The next day, victim went to meet Hill at the appointed time and place, but Hill did not appear. Believing she and Hill had miscommunicated, victim proceeded to the Wal–Mart. She looked for Hill in the shoe department, where a man identifying himself as Brad approached her. They began conversing about Hill's whereabouts, and defendant suggested they wait for her outside. After waiting outside a few moments, defendant suggested they wait in victim's car to escape the cold weather, and victim agreed.

In the car, defendant began telling victim about himself and his personal life. Defendant proceeded to tell victim Hill would set him up with women so that he could have shoe fantasies. At this point, defendant slipped his right hand into his jacket pocket

1993 unless otherwise noted.

and, in an "assertive tone of voice," asked victim to start the car. Victim believed defendant had a gun due to his conduct, and so she complied with his request. Defendant told her to drive to a park, giving her directions as she drove. Defendant then became very agitated when he could not find the park. He told victim to keep driving. Defendant continued to discuss his fantasy about nurses and nurse shoes and began rubbing his penis through his pants with his left hand. His right hand remained in his pocket during this time. Victim believed she was going to be raped.

Defendant instructed victim to pull into a church parking lot and park at the far end. He told victim to try on some of the shoes she had brought in the car. When she complied, he began stroking himself with both hands. Defendant then pulled down his pants and continued masturbating. He produced a stethoscope from his jacket and told her he wanted her to listen to his heartbeat. Victim, still fearing she would be raped, accommodated defendant because she believed it was the safest course.[2]

Defendant became more excited as victim "played along." At this point, he grabbed victim's arm and, squeezing it hard, pulled her hand toward his penis, saying, "I want you to touch me." Victim jerked her arm away exclaiming, "I can't do that." Defendant replied, "Okay, okay," and continued to masturbate until he climaxed.[3]

Victim asked if they could leave; defendant said yes and gave victim directions back to the Wal–Mart. There, he wrote out a receipt for "services rendered," and told victim Hill would pay her. Victim said she could not reach Hill, so defendant wrote down two telephone numbers for her. He then left.

Victim reported the crime to the St. Peters police two weeks later. She gave a statement and identified defendant out of a series of photographs shown to her. Defendant was arrested. Initially, he denied being in the area, claiming he was at home that day. Defendant then confessed he met victim through Hill, though he denied exposing himself or masturbating. He gave the police the numbers he used to contact Hill. They traced one number to a disconnected pager and the other to a pay telephone. Hill was never found.

At trial, defendant did not testify nor did he present any witnesses. The jury returned a verdict of guilty. The trial court sentenced defendant as a prior offender to fifteen years in prison. This appeal follows.[4]

■ Defendant presents two issues to this court for review. First, defendant challenges the sufficiency of the evidence on his use of force necessary to sustain a conviction for attempted forcible sodomy. Second, defendant claims the trial court committed reversible error in allowing the prosecutor to make certain statements during his closing argument. For the reasons that follow, we find both contentions without merit.

When reviewing a case to determine whether the evidence was sufficient to support a conviction, we "must consider as true all evidence favorable to the state as well as all reasonable inferences that may be drawn therefrom." State v. Hannett, 713 S.W.2d 267, 270 (Mo.App. W.D.1986). Here, defendant challenges the evidence proving he committed the offense by use of forcible compulsion. The jury instructions, which were based on RSMo § 556.061(12), defined "forcible compulsion" as either:

---

**2.** Victim testified she thought people who found themselves in a rape situation were supposed to do what the attackers asked. Victim also testified she was trying to plan an escape, but, believing defendant still had a gun, could not think of a safe way to get the car door unlocked and did not know where she was.

**3.** It should be noted that the statutory definition of "deviate sexual intercourse," which forms the basis of sodomy, included hand to genital contact at the time these acts occurred. See RSMo Supp. § 566.010(1) (1993). Compare RSMo

§ 566.010(1) (1994) (effective January 1, 1995) (redefining "deviate sexual intercourse" so as to exclude hand to genital contact).

**4.** Defendant also filed a Rule 29.15 motion for postconviction relief which was denied without an evidentiary hearing. Although defendant filed an appeal from that ruling, he has abandoned it by not raising any Rule 29.15 issues in his brief. State v. Nelson, 818 S.W.2d 285, 287 (Mo.App. E.D.1991).

(a) Physical force that overcomes reasonable resistance; or

(b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person.

Defendant asserts his grabbing of victim's arm in an attempt to force her to touch his penis did not meet the physical force standard set forth above. Defendant emphasizes the fact he did not make a second attempt after victim, repulsed by his demand, jerked her arm away. Defendant appears to argue he could not exercise force against victim—at least force that would satisfy the definition of "forcible compulsion"—until after victim physically demonstrated resistance. We decline to adopt defendant's argument. Here, defendant physically reached out, and with force calculated to overcome her resistance, attempted to make victim touch him.[5]

■ Furthermore, defendant ignores the circumstances which indicated victim was not a voluntary participant in his "fantasy," the first and foremost being that victim believed defendant was armed with a gun. A victim does not have to physically resist where she submits to an offensive act out of fear of personal harm. *See State v. Nixon,* 858 S.W.2d 782, 786 (Mo.App. E.D.1993). Additionally, victim only "participated" when told to by defendant, while the remainder of the time she looked straight ahead in an effort to disassociate herself from defendant and his conduct. The evidence was clear victim only submitted to the defendant's "requests" out of fear of personal violence. Her belief she would be harmed, in conjunction with the physical force defendant applied against victim, constituted sufficient evidence of forcible compulsion to sustain defendant's conviction.[6] Point denied.

■ Defendant next contends the trial court erred in overruling defendant's objections to comments made by the prosecutor in the state's closing argument. Defendant asserts the statements improperly personalized the case to the jury by asking them to put themselves in victim's place. We note the trial court has broad discretion in controlling closing argument. *State v. Hamilton,* 847 S.W.2d 198, 199 (Mo.App. E.D.1993). We will reverse for an abuse of that discretion only if the argument allowed was "plainly unwarranted." *Id.*

■ Defendant takes issue with two statements made by the prosecutor. First, defendant cites a passage from the beginning of the state's closing argument, wherein the prosecutor admitted to the jury how strange the facts of this case must seem at first and continued:

> [PROSECUTOR]: Now, after you got that—after you get that—talk that over, ask yourself, first of all, is there anything you have done in your life that is deeply embarrassing, something that you might be—you really can't tell anyone about, or at least it took you awhile to talk about it.

Defendant objected at that point, contending the state was personalizing the case to the jury. It is improper for the state to personalize to the jury in an effort to inflame its emotions and prejudices. *Id.* at 200. "Moreover, an argument is not 'personalized' where it does not suggest a personal danger to the jurors or their families if the defendant were to be acquitted." *Id.* Here, the prosecutor was drawing on the jurors' everyday experiences to demonstrate it is not unusual for victims of sexual assaults to delay reporting the incident because of their embarrassment.

---

**5.** Defendant's physical act accompanied by his statement that he wanted victim to touch him was sufficient evidence from which the jury could have inferred defendant acted with the purpose to commit sodomy, an element of attempt which defendant mildly challenges under this point. Thus, we disagree with defendant's contention that evidence supporting this purpose was wholly lacking at trial.

**6.** The case relied on by defendant, *State v. Daleske,* 866 S.W.2d 476 (Mo.App. W.D.1993), is inapposite. The court in *Daleske* found the de-

fendant's threats he would ground the victim if she did not perform oral sex on him were insufficient to show the victim was in reasonable fear of being kidnapped under RSMo § 556.061(12)(b). 866 S.W.2d at 478. In *dicta,* the court stated the victim's testimony that the defendant had held her head many times and guided her head toward his penis on one occasion were insufficient to establish physical force overcoming reasonable resistance under RSMo § 556.061(12)(a). 866 S.W.2d at 478.

Defendant, during cross-examination of victim and in his own closing argument, attacked the reasonableness of victim's delay in reporting the crime implying victim waited because she fabricated the crime. The prosecutor's comment was not an appeal to the jury's passions or prejudices to convict defendant due to the nature of the crime, but was a plausible explanation of victim's conduct which drew on the jurors' own experiences.

 Defendant also cites a passage further along in the state's argument, where the prosecutor addressed victim's refusal to fight defendant:

> [PROSECUTOR]: Fight, scratch, claw, what is she supposed to do? What would you do? What would your wife, what would your mother, what would your daughter do?
>
> [DEFENSE COUNSEL]: Objection as to personalization.
>
> THE COURT: [Overruled].
>
> [PROSECUTOR]: What would your wife, your daughter, your mother do? What would you do if there was a man there … said [sic] "Give me your wallet," and had his hand in [his] pocket? Would you try and fight it out with him?

Again, the prosecutor's comments were not calculated to fan the flames of juror passion or prejudice against defendant and his conduct. Indeed, the prosecutor posited a different—and less offensive—crime than that committed by defendant. Rather, the state asked the jury to weigh the credibility of victim and the reasonableness of her actions when she testified she did not fight defendant for fear he had a gun. *See id.* (finding no improper personalization where the state asked jury to act as victim did during crime to test reliability of her identification). "Within the broad limits of closing argument, it is the prosecutor's right to comment on the witnesses' credibility from the state's viewpoint." *Id.* Finally, the state's argument, while referencing various female family members, did not imply danger to the jurors

or to their families from defendant if he were acquitted.[7] Point denied.

Based on the foregoing, the judgment of the trial court is affirmed.

DOWD, P.J., and REINHARD, J., concur.

---

7. Once again, the cases on which defendant relies do not support his position. In each of the cited cases, the state asked the jury to pretend they were the victim and then graphically detailed the crime as it took place. *See State v. Storey,* 901 S.W.2d 886, 901 (Mo.banc 1995); *State v. Long,* 684 S.W.2d 361, 363–64 (Mo.App. E.D.1984).