STATE of Missouri, Respondent,

v.

Lawrence E. NEAL, Appellant.

No. WD 70607.

Missouri Court of Appeals,
Western District.

Nov. 2, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied
Jan. 25, 2011.

Ruth B. Sanders, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Jamie P. Rasmussen, Jefferson City, MO, for respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Lawrence Neal ("Neal") was convicted after a jury trial of one count of forcible rape and one count of robbery in the first degree. Neal appeals the trial court's overruling of his motions for judgment of acquittal as to both charges. Further, Neal argues the trial court plainly erred in submitting a deficient jury instruction for robbery in the first degree. We affirm in part and reverse in part.

## I. Factual Background[1]

Neal was convicted after a jury trial in the Jackson County Circuit Court of one count of forcible rape, Section 566.030,[2] and one count of robbery in the first degree, Section 569.020. Neal was acquitted, by the jury, of one count of forcible sodomy, Section 566.060.

On January 14, 2008, K.L.[3] drove her vehicle to pick up her boyfriend Benjamin Robbins ("Robbins") from work when her car stalled at 82nd and Troost. Neal, a stranger, got into K.L.'s vehicle uninvited. K.L. did not ask Neal to get out of the car because she was shocked and scared. K.L. agreed to give Neal a ride home. After arriving in Neal's parking lot, he proceeded to take K.L.'s keys out of the ignition, preventing her from leaving. Neal told K.L. he needed money, and he then proceeded to dump the contents of her purse onto the front seat of the vehicle. K.L. did not have any money and she could not recall the exact words said by Neal, but he told her she had to go up to the apartment. Neal grabbed K.L.'s arm after she exited the car and led her up to the apartment. Neal told K.L., as they

---

1. The facts are recited in a light most favorable to the verdict. *State v. Rutter*, 93 S.W.3d 714, 720 (Mo. banc 2002).

2. All statutory citations are to RSMo 2000, as updated through the 2009 Cumulative Supplement, unless otherwise indicated.

3. The victim K.L. is referred to by her initials in compliance with Section 566.226.

walked up to the apartment, "[i]f anyone asks, you're my girlfriend and you smoke dope." Neal led her past a "short white woman," who looked to be angry with Neal, and into a bedroom.

Neal told K.L. to get undressed. She initially refused. Neal then told her she could leave if she did what he wanted. There was a knife on the night stand, and then Neal put something that appeared to be a gun on the dresser. Neal threatened to kill her. Neal then had sexual intercourse with K.L. K.L. testified she felt she had no choice in the matter. K.L. did not fight off Neal because she did not want him to hurt her. She did not feel anyone would have helped her if she had screamed or asked for help.

After the sexual intercourse, Neal told K.L. he needed money and asked her for her ATM card. K.L. told him she did not have one but did have checks. He told her to go to Price Chopper to cash a check. Neal told K.L. "to act right" and "[d]on't do anything stupid" as they walked toward the store. K.L. purchased some soda and wrote a check at Price Chopper for fifty dollars over the purchase price. K.L. gave the money to Neal when they arrived back in the vehicle. Neal told K.L. to go back to his apartment so that she could douche to get his DNA off of her.

K.L. drove back to the apartment, and once inside, Neal forced her to smoke crack. Neal attempted to have sexual intercourse with K.L. again but he could not maintain an erection. Neal then told her to perform oral sex on him, which she did. K.L. told Neal that she could get more money from her boyfriend when she picked him up from work. Neal told her that he would ride with K.L. Neal and K.L. agreed to tell K.L.'s boyfriend, Rob-

bins, that the vehicle had broken down and Neal was riding with K.L. to make sure it did not break down again.

When K.L. picked up Robbins two hours late from work, Neal was in the car. Robbins was upset, as he had been calling and texting K.L. After picking Robbins up, K.L. dropped Neal off at his apartment complex. K.L. discreetly gave Neal back his crack pipe, which was in her purse, because she knew Robbins would be angry if he saw the pipe. After Neal departed, Robbins inquired as to what was going on, and K.L. started to cry and told Robbins that she had been raped. They went home and Robbins called 911.

K.L. was examined at a hospital and Neal's DNA was discovered from K.L.'s rape kit. Neal was tried before a jury and eventually sentenced to consecutive terms of thirty years incarceration for forcible rape and twenty-five years incarceration for first degree robbery. Neal now appeals.

## II. Analysis

### A. Forcible Rape

In Point One, Neal argues the trial court erred in overruling his motion for judgment of acquittal as to Count I for forcible rape, because the State's evidence was insufficient for a reasonable juror to find guilt beyond a reasonable doubt as to each element of the crime because the State presented no evidence that Neal used forcible compulsion in connection with the sexual intercourse.[4]

### Standard of Review

When reviewing the sufficiency of evidence supporting a criminal conviction,

---

4. Neal argues this was a violation of his rights to due process of law and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 18(a) of the Missouri Constitution.

the Court gives great deference to the trier of fact. Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.

*State v. Oliver,* 293 S.W.3d 437, 444 (Mo. banc 2009) (internal quotation marks and citations omitted).

## Analysis

■ Due process requires the State to prove each element of a crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State v. Bowman,* 311 S.W.3d 341, 343 (Mo.App. W.D.2010). Neal was charged under Section 566.030 with forcible rape. Section 566.030 provides "[a] person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion." "Forcible compulsion" means either "(a) Physical force that overcomes reasonable resistance; or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person." Section 556.061(12).

■ K.L.'s testimony does not directly establish that the sexual intercourse she had with Neal was the result of physical force. The State argues that the evidence supports the second factor of either an express or implied threat which caused K.L. to have a reasonable fear of death, serious physical injury, or kidnapping.

Evidence of an explicit threat by Neal in connection with the rape was presented to the jury. There was evidence that Neal threatened to kill K.L. There was evidence that there was a knife on the nightstand and that Neal put something that looked like a gun on the dresser. K.L. testified that Neal took her into the apartment against her will and told her that she could not leave unless she did what he wanted. Therefore, a reasonable juror could have found beyond a reasonable doubt that Neal explicitly threatened K.L. and placed her in a reasonable fear of death, serious physical injury, or kidnapping.

■ A reasonable juror could also have found beyond a reasonable doubt an implied threat to K.L. that placed K.L. in reasonable fear of death, serious physical injury, or kidnapping. In *State v. Thiele,* the Eastern District of this court upheld a conviction of forcible rape when the victim submitted to the defendant's sexual requests out of "fear of personal violence" in conjunction with minimal physical force that consisted of only grabbing the victim's arm. *State v. Thiele,* 935 S.W.2d 726, 728 (Mo.App. E.D.1996).[5] Although the court in *Thiele* found that the force used was sufficient for a jury to find physical force that overcame reasonable resistance, the court found further that the circumstances indicated that the victim was not a voluntary participant in the defendant's fantasy. The defendant's actions made the victim believe he had a gun, even though there was no express threat, and the victim's actual belief that the defendant was armed was sufficient to find an implied threat to satisfy the element of "forcible compulsion." *Id.* A reasonable belief of impending harm combined with some physical

5. In *Thiele* the conviction was for attempted forcible sodomy. However, the element of "forcible compulsion" is identical for both forcible sodomy and forcible rape. *See* Section 556.061.

force is sufficient to sustain a conviction for forcible rape. *Id.*

Viewing the evidence in a light most favorable to the verdict, a reasonable juror could have found beyond a reasonable doubt that Neal's actions constituted an implied threat that placed K.L. in a reasonable fear of death, serious physical injury, or kidnapping. Here, K.L. testified to the following: Neal was an uninvited stranger that forced his presence upon her by entering her vehicle without her permission; he took her keys from the ignition so she could not leave; he made it clear he was looking for money and dumped out her purse; he grabbed her arm and led her into the apartment; weapons were located in the bedroom; he threatened to kill her; and after resisting getting undressed, Neal told K.L. she could leave "if [she] just did what he wanted." Considering the context and totality of events, a reasonable juror could have found both an express threat and that Neal's actions constituted an implied threat that placed K.L. in a reasonable fear of death, serious physical injury, or kidnapping. This is sufficient to satisfy the statutory definition of "forcible compulsion."

Point One is denied.

## B. Robbery in the First Degree

### 1. Sufficiency of the Evidence

In Point Two, Neal argues the trial court erred in overruling Neal's motion for judgment of acquittal for robbery in the first degree in that the State did not submit sufficient evidence to prove beyond a reasonable doubt all the elements of the offense.

Neal argues that there was not sufficient evidence to establish that he "forcibly [stole]" from K.L. "Forcibly steals" is defined as when, "in the course of stealing, [ . . . ] he uses or threatens the immediate use of physical force upon another person for the purpose of [ . . . ](b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft." Section 569.010(1). Second, Neal argues that the evidence adduced at trial was insufficient for a juror to find beyond a reasonable doubt that Neal "threaten[ed] the immediate use of a dangerous instrument" in the course of the robbery.

■ Missouri courts consider not only the circumstances immediately surrounding the alleged robbery but events prior to the robbery to determine whether the elements of the offense are satisfied. The language "in the course of" and "in the course thereof" modify both the statutory definition of "forcibly steals," the first element of first degree robbery, and the second element, "[u]ses or threatens the immediate use of a dangerous instrument against any person." *See* Section 569.010(1); Section 569.020. Both phrases have been interpreted to mean that the entire course of the robbery must be considered to determine whether the elements have been satisfied.

Robbery in the first degree is committed when "in the course" of forcible stealing, a person is armed with a deadly weapon or uses or threatens the use thereof. "In the course" of forcible stealing is a broad term. It covers the whole transaction or occurrence. The statute does not state that during the actual taking of the property appellant must simultaneously display or threaten the use of a deadly weapon, but only that "in the course thereof" defendant uses or threatens to use a weapon. As long as a weapon is used "in the course" of forcible stealing, the offense is robbery in the first degree.

*State v. Yancy,* 779 S.W.2d 712, 714–15 (Mo.App. E.D.1989) (citing *State v. Burston,* 684 S.W.2d 568, 569 (Mo.App.1985)); *see also State v. Weems,* 840 S.W.2d 222, 228 (Mo. banc 1992) (citing *Yancy,* 779 S.W.2d at 715 ("As used in the context of forcible stealing, 'in the course of' is a broad term, covering the whole transaction. So long as the fear or violence precedes or is contemporaneous with the taking, the offense of robbery is complete.")) Thus, events prior to and contemporaneous with the robbery must be considered to determine whether the elements of the offense have been satisfied.

■ K.L. never saw Neal with a weapon in his hand at any point during the robbery. However, the entire course of events that night leading up to the robbery must be considered to understand K.L.'s state of mind and to determine whether Neal made a threat to immediately use a dangerous instrument in the course of the robbery. *See State v. Belton,* 949 S.W.2d 189, 192–93 (Mo.App. W.D.1997) (quoting *State v. Collins,* 567 S.W.2d 144, 146 (Mo. App.1978) ("Robbery in the first degree may be found where the victim is in fear even though there was no real possibility of injury.")); *Lewis v. State,* 24 S.W.3d 140, 144 (Mo.App. W.D.2000) (citing a series of cases which held "the State does not have to show that the defendant actually possessed a dangerous instrument, only that there was evidence from which the fact finder could reasonably conclude that the victim believed that the defendant was threatening its use.") Therefore, the victim's experience of the events as a whole must be considered in determining whether a threat to use a dangerous weapon was made in the course of the robbery.

■ The facts adduced at trial, viewed in a light most favorable to the verdict, support a finding beyond a reasonable doubt that Neal both "forcibly [stole]" and "threatened the immediate use of a deadly weapon or dangerous instrument" in the course of the robbery. The entire episode including Neal getting into K.L.'s car uninvited, raping her and then taking her to the store to cash a check occurred in a matter of hours. Neal, before he got out of the car the first time, told K.L. he needed money and dumped out the contents of her purse. In the bedroom where the rape occurred, K.L. saw both a knife and what appeared to be a gun. Neal threatened to kill her. Neal told K.L. when going into the store to cash a check to "act right" and "[d]on't do anything stupid" and that "he didn't have anything else to live for." K.L. handed the money over to Neal when they returned to the car. A reasonable juror could infer from these facts that forcing a female stranger up to one's room where there are weapons in plain view, after telling her that he needed money, telling her he did not have anything to live for and raping her, is sufficient to constitute a threat against K.L. of physical force in order to coerce her into complying with his demand for money. Further, the presence of deadly weapons in the bedroom where he raped her is sufficient for a jury to infer that the presence of those weapons constituted a threat to use a dangerous instrument in the course of the robbery. The evidence was sufficient to find Neal guilty beyond a reasonable doubt of robbery in the first degree.

Point Two is denied.

### 2. Improper Jury Instruction

In Point Three, Neal argues that the trial court plainly erred in submitting Instruction # 9 for Count III, robbery in the first degree, in that the verdict director submitted to the jury failed to include a necessary element.

## Standard of Review

Neal did not object to the use of the improper verdict director at trial and, therefore, requests that this court review the issue under plain error. "Instructional error is rarely plain error...." *State v. Shockley,* 98 S.W.3d 885, 891 (Mo.App. S.D.2003). To show plain error, Neal has the burden of proof to " 'establish that the trial judge so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice.' " *State v. Vaughn,* 11 S.W.3d 98, 105 (Mo.App. W.D. 2000) (quoting *State v. Hill,* 970 S.W.2d 868, 872 (Mo.App. W.D.1998)). "A manifest injustice occurs as a result of instructional error where 'it is apparent that the instructional error affected the jury's verdict.' " *Id.* (quoting *State v. McCoy,* 971 S.W.2d 861, 864 (Mo.App. W.D.1998)).

## Analysis

The trial court submitted the robbery in the first degree charge in Instruction # 9, MAI–CR 323.04, as it was submitted by the State and without objection by Neal. However, MAI–CR 323.04 is the verdict director for robbery in the second degree. The verdict director for robbery in the first degree is MAI–CR 323.02.

Both robbery in the first degree and robbery in the second degree share the common element of forcibly stealing property. *See* Sections 569.020; 569.030. What distinguishes robbery in the first degree and robbery in the second degree, is that robbery in the first degree also includes an additional element: that the Defendant "(1) Causes serious physical injury to any person; or (2) Is armed with a deadly weapon; or (3) Uses or threatens the immediate use of a dangerous instrument against any person; or (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." Section 569.020. The State alleges that

the evidence established that in the course of the robbery Neal "threatened the immediate use of a deadly weapon or dangerous instrument." The verdict director submitted to the jury did not contain this necessary additional element for robbery in the first degree as prescribed by Section 569.020.

A verdict director must contain each element of the crime charged and failure to comply with approved instructions constitutes error. *See State v. Bradshaw,* 26 S.W.3d 461, 472 (Mo.App. W.D. 2000) (citing Rule 28.02(f)). " 'A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of the offense charged.' " *State v. Doolittle,* 896 S.W.2d 27, 30 (Mo. banc 1995) (quoting *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988)).

The State argues that failure to include an element of an offense will not cause manifest injustice when either of two situations exist: 1) the other instructions make it clear that the jury found the missing element beyond a reasonable doubt or 2) where the element was not contested at trial.

The State's argument—that because Neal's primary defense was to attack K.L.'s credibility and suggest that she was lying about what happened that evening, therefore, he was not contesting the allegation that he threatened to use a deadly weapon in connection with the robbery—strains the bounds of credibility. In short, Neal's defense at trial was that K.L. was lying, consented to sexual intercourse that night, and there was no robbery. That defense necessarily implies he was contesting the allegation that he used a deadly or dangerous weapon against K.L. in connection with the robbery. We can-

not find, as the State suggests, that when a defendant argues that the sex was consensual and no robbery occurred (i.e. that there was no crime), that, therefore, the defendant is not challenging that a deadly or dangerous weapon was used in connection with the crime. "[I]t would be ludicrous to require a defendant to dispute every element of the crime of which he is charged, when he claims that he did not commit the crime." *State v. Roe,* 6 S.W.3d 411, 416 (Mo.App. E.D.1999).

The State's next argument is that the instructions submitted must be considered as a whole, and, if the omitted language is either included in another instruction or where the facts to be found by another instruction demonstrate the jury necessarily found the facts supporting the conviction under the defective instruction, then manifest injustice has not been caused by the omission of the necessary element.

The State cites three cases in support of this proposition where Missouri courts have found omitted instructional errors inconsequential. In *State v. Dismang,* the statutory definition of "serious physical injury" was contained in a separate jury instruction at the end of the instruction pack rather than in the instructions themselves, and the court rejected the contention that the jury could have failed to understand the concept because there was little potential for confusing or misleading the jury. 151 S.W.3d 155, 164–65 (Mo. App. S.D.2004). In *State v. Holt,* a general instruction regarding the State's burden of proof specifically stated it applied to all elements of the offenses charged, and therefore, failure to repeat that instruction with respect to a verdict director regarding a specific offense was not error. 592 S.W.2d 759, 776 (Mo. banc 1980). Finally, in *State v. Livingston,* the jury instructions contained superfluous words regarding the possible involvement of other per-

sons in the offense, but because of the evidence presented at trial, the superfluous words would not have confused a reasonable juror, and therefore, the Supreme Court found no error. 801 S.W.2d 344, 349–50 (Mo. banc 1990). These cases cited by the State, however, do not support the State's argument in the case at bar. None of those cases are apposite here where the court failed to instruct the jury as to a necessary element of the crime charged.

The State also relies on *State v. Cooper* in which the defendant was charged with escaping from confinement with an additional aggravator that he used a deadly or dangerous weapon to effect his escape. 712 S.W.2d 27, 29 (Mo.App. E.D.1986). The court failed to submit to the jury the element of whether the escape was effected by means of a deadly weapon or dangerous instrument. *Id.* at 30. The court in *Cooper* upheld his conviction because "[t]he jury also found defendant guilty of armed criminal action in effecting his escape, and, under the armed criminal action instruction, the jury *necessarily* found the escape was committed by using a dangerous instrument." *Id.* (emphasis added). Therefore, when the instructions were read together, any error that may have occurred was not prejudicial. *Id.*

Unlike the case at bar, the instructions when read as a whole in *Cooper* necessarily meant that the jury had found the omitted element. The State's argument in the present case is that because the jury found forcible compulsion in the charge of rape, therefore they must have found the element of the use or threatened immediate use of a dangerous weapon in the robbery count. The State's argument is flawed. A finding that forcible compulsion was used in the rape of K.L. does not, standing alone, require a finding that in the course of a subsequent robbery that he "use[d] or threaten[ed] the immediate use of a dan-

gerous weapon against any person." Section 569.020. There was evidence from which a reasonable juror could have found that a weapon was used in the rape but not used in the robbery, which occurred at a point in time after the rape was concluded.

" 'A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of offense charged.' " *Doolittle*, 896 S.W.2d at 30 (quoting *Ward*, 745 S.W.2d at 670). Here, the State's use of an incorrect jury instruction "totally excused the State from its burden of proof as to a contested element of a crime" which is a "significant error." *Id.* Although the Supreme Court of Missouri has not yet "determine[d] whether the failure to include a contested element of a crime in an instruction will always result in plain error," the cases suggest that where an essential element is missing from the instruction, thereby lowering the State's burden of proof, plain error is established. *See e.g., Id.* (holding that because the jury was not instructed to find that the defendant had used or threatened to use a dangerous instrument, and the instruction did not include a definition of a "dangerous instrument," this constituted plain error because the jury could have found the defendant guilty without finding that he used a dangerous instrument); *State v. Jones*, 865 S.W.2d 658, 662 (Mo. banc 1993) (holding that that the failure to define possession in a verdict director, where "possession" is an essential element of the offense charged, is prejudicial error); *State v. Farris*, 125 S.W.3d 382, 392 (Mo. App. W.D.2004) (holding the failure to define "possession" in the verdict director for attempt to manufacture methamphetamine, where possession was an essential element of the crime, was plain error).

Even if every instance in which an element of an offense is omitted from a jury instruction is not plain error, " 'where a verdict director effectively omits an essential element of the offense, such an instruction rises to the level of plain error if the evidence in the case fails to establish the existence of the omitted element beyond serious dispute.' " *Farris*, 125 S.W.3d at 394 (quoting *State v. Harney*, 51 S.W.3d 519, 533–34 (Mo.App. W.D.2001)). Here, there was evidence to place in serious dispute K.L.'s claim that Neal threatened to use a dangerous instrument to forcibly rob her. There was a video from Price Chopper, which showed Neal and K.L. entering and exiting the store holding hands, no physical force was shown, and no weapons were visible. Neal's defense was that K.L. consented to the entirety of events of that night. This court cannot say that a reasonable jury could have unanimously determined this contested issue when it was not submitted in the instruction. *See id.* Accordingly, although the evidence was sufficient to convict Neal of robbery in the first degree, the omission from the verdict-director of the additional element of "threaten[ed] the immediate use of a dangerous instrument against any person" to convict Neal of first degree robbery resulted in manifest injustice and a miscarriage of justice.

Point Three is granted in part.

### III.  Remedy

We next turn to the appropriate remedy for the instructional error in Point III.

The general rule is that the remedy for instructional error is to remand the case for a new trial. *State v. Whardo*, 859 S.W.2d 138, 140 (Mo. banc 1993).

In a case of first impression addressing facts similar to those of the case at bar, the Eastern District of this Court found that the appropriate remedy was to re-

mand the case back to the trial court allowing the State the option of retrying the defendant on all charges or accepting convictions for the lesser charges that were properly submitted to the jury and having the defendant resentenced by the trial court on those lesser charges. *State v. Roe*, 6 S.W.3d at 418. The Court in *Roe* based its holding on case law from other jurisdictions and policy considerations. The Court relied upon the principle that "[i]t is fundamental that the appellate remedy should extend no further than the scope of the wrong." *Id.* at 417. The Court went on to note that the wrong in that case was that the trial court misdirected the jury as to the proper elements of the crime and, in spite of a vigorous defense, the jury convicted the defendant of the lesser included offenses. Because the defendant was given a full and fair opportunity to defend against the lesser included offenses but was still convicted, combined with the defendant's failure to timely object to the improper instruction, the Court found that the remedy of a new trial exceeded the scope of the wrong and provided a windfall to the defendant. *Id.* at 417–418.

The procedural posture of *Roe* is somewhat unique, in that the case had been affirmed on direct appeal[6] and it was not until several years later in a federal habeas corpus action that the defendant first raised his claims of instructional error. After an order of the Eighth Circuit Court of Appeals, the Eastern District of Missouri recalled their original mandate and allowed the defendant to proceed on this appeal.

The Court in *Roe* does not indicate if the improper instruction was submitted by the State or by the trial court, but focuses on the Defendant's failure to raise an objection to the improper instruction. The Court in *Roe* ignores the actions by the State in failing to ensure the trial court properly instructed the jury as to the crimes charged.

In the case at bar, there is no doubt from the record that it was the State that submitted the improper instruction, setting forth the elements of robbery in the second degree. This put Neal's counsel in the awkward position of deciding whether or not to object to the State's submission of a *lesser* offense than the crime charged.

■ The charge of robbery in the second degree, under Section 569.030, is a lesser included offense to the charge of robbery in the first degree under Section 569.020. *State v. Hendricks*, 675 S.W.2d 142, 146 (Mo.App. E.D.1984). Neal did not object to the submission of instruction # 9 as MAI–CR 323.04, which set forth the elements of robbery in the second degree. An instruction for a lesser included offense must be given if there is any evidence from which a reasonable juror could find Neal did not commit the greater offense but could find him guilty of the lesser. *State v. Smith*, 229 S.W.3d 85, 92 (Mo.App. W.D. 2007). Any doubt should be decided in favor of submitting the lesser included offense. *Id.*

While it was plain error to convict Neal of robbery in the first degree under instruction # 9, it was not error to convict him of the lesser included offense of robbery in the second degree. By not objecting to the instruction of the lesser included offense, Neal consented to the submission of this lesser charge under instruction # 9. As discussed in Neal's Point Two on Appeal, the evidence was sufficient to support the jury's finding beyond a reasonable doubt that Neal committed the offense of first degree robbery, which necessarily

---

6. *State v. Roe*, 845 S.W.2d 601 (Mo.App. E.D. 1992).

means that it was also sufficient to convict him of the lesser included offense of second degree robbery.

In borrowing the Eastern District's analysis that the appellate remedy should not exceed the scope of the wrong, we cannot find that in this case the State should be granted a windfall for its error, in providing the improper instruction to the trial court, thereby allowing the State to retry the case hoping to convict Neal of the higher charge of robbery in the first degree. Likewise, Neal should not receive the windfall of a new trial based on his failure to object to the improper instruction. As in *Roe,* Neal did not receive a fair trial on the charge of robbery in the first degree based upon the improper instruction, but he did receive a perfectly fair trial on the charge of robbery in the second degree. Because Neal has been adjudicated a prior offender, the sentencing in this matter is for the judge and not the jury so, therefore, there is no issue as to Neal's expectation of a jury assessing his punishment. *Id.* at 417.

■ This Court is mindful of the traumatic experience a trial is for a victim of rape and is reluctant to a grant a new trial if it can be justly avoided. The parties, the victims, the jurors and the citizens of the State have an interest in having cases fully and finally decided. Neither judicial economy nor the rights of the parties would be served by granting either party a new trial in this matter. Both parties consented to the submission of the lesser included offense of robbery in the second degree. Therefore, Neal should be properly sentenced for the crime for which he was properly convicted. *See State v. Boyd,* 91 S.W.3d 727 (Mo.App. S.D.2002) and *Woolford v. State,* 58 S.W.3d 87 (Mo. App. W.D.2001).

## IV. Conclusion

Neal's conviction of first degree robbery is reversed and remanded for the trial court to enter a judgment of conviction on robbery in the second degree and to resentence Neal on that charge, within the range of punishment for robbery in the second degree, based on his adjudication as a prior offender. Neal's conviction of forcible rape is affirmed.

All concur.