**STATE of Missouri, Respondent,**

v.

**Jason FARRIS, Appellant.**

**No. WD 61517.**

Missouri Court of Appeals,
Western District.

Jan. 27, 2004.

Kent Denzel, Columbia, MO, for appellant.

Linda Lemke, Assistant Attorney General, Jefferson City, MO, for respondent.

Before BRECKENRIDGE, P.J.,
EDWIN H. SMITH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Judge.

Jason Farris appeals his conviction and sentence for attempt to manufacture methamphetamine, section 195.211, RSMo 2000.[1] Mr. Farris was sentenced to seven years imprisonment. Mr. Farris raises two points on appeal. First, he claims that the evidence was insufficient to establish that he attempted to manufacture methamphetamine. Second, he asserts that the trial court plainly erred in denying his request to instruct the jury on the definition of possession. This court finds that the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Mr. Farris was guilty of attempt to manufacture methamphetamine. Nevertheless, because the trial court plainly erred by failing to instruct the jury on the definition of possession, an element of attempt to manufacture methamphetamine, as charged in this case, the judgment of the trial court is reversed and the cause is remanded for a new trial.

## Factual and Procedural Background

On appeal from a criminal conviction, "[t]his court reviews the facts in the light most favorable to the verdict." *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995). On June 27, 2001, at about 11:20 P.M., three men were with a car that was parked on the wrong side of County Road 419. At least two of the men were outside of the car. Rhonda Brand, who lived on that road, slowed down to pass the car and, while driving past, she smelled ether.

Ms. Brand recognized the smell because she had smelled ether at the Chariton County Sheriff's Department, where she was employed as a cook. She memorized part of the license plate number and proceeded to her house about one and one-quarter miles away. Upon reaching her house, Ms. Brand immediately called the sheriff to report a possible methamphetamine lab. The time was 11:40 P.M.

While Ms. Brand was speaking to Sheriff Chris Hughes on the telephone, the car she had just seen on County Road 419 passed by her house. She told this to Sheriff Hughes, who radioed Deputy John Shackley for assistance. Sheriff Hughes then drove to the area where the car was traveling. In route, Sheriff Hughes also radioed Officer Kevin Atwood for assistance to ensure the car did not get away.

After driving through the intersection of Route KK and Highway 5, Sheriff Hughes met a car going in the opposite direction on Route KK matching the description and partial license plate Ms. Brand had provided. He then turned around and followed the car. The car sped up when Sheriff Hughes got behind it, raising a cloud of dust from its speed. It failed to stop at the stop sign at the intersection of Route KK and Highway 5. Sheriff Hughes followed the car through the intersection and smelled a very strong odor of ether, which was not present the first time he passed through the intersection, less than two or three minutes earlier. Officer Atwood followed Sheriff Hughes and the car through the intersection, and he also smelled a strong chemical odor that was not present earlier. Neither Officer Atwood nor Sheriff Hughes saw any other vehicles in the area.

Sheriff Hughes pulled over the car. The stop was made at 11:51 P.M. Sheriff

1. All statutory references are to the Revised Statutes of Missouri 2000.

Hughes ordered Mr. Farris, William Zike,[2] and Richard Roe out of the car and handcuffed them. Sheriff Hughes determined that the car belonged to Mr. Zike, and that Mr. Farris was a passenger in the car and was seated on the right-hand side. Sheriff Hughes could not tell if Mr. Farris was seated in the front or back seat. The car smelled of ether, and glassware was found in the passenger compartment. The three men told the police officers that they had been driving around, drinking beer.

Following the arrest, Sheriff Hughes joined Deputy Shackley at the Route KK and Highway 5 intersection where the odor was located. Near the intersection, they found a five-gallon bucket of anhydrous ammonia and a Tupperware container that contained a sticky tan or pasty white substance that smelled strongly of ether. Both the bucket and the Tupperware container were still wet. The Tupperware container's lid had been ducttaped shut, but the lid had come off when it hit the ground, and its contents, white chunks, were strewn across the ground. Both the bucket and Tupperware container were found on the passenger side of the roadway, fifteen feet from the road. The residue on the Tupperware container was later determined to be methamphetamine.

After searching near the intersection, the officers went back to where Ms. Brand had seen the parked car. At that location, they found a white towel with holes from a black acid substance, coffee filters, duct tape, and a twenty-ounce soda pop bottle with the top cut and made into a funnel. In the woods adjacent to the road, the officers also found a "generator" made with a two-liter soda pop bottle containing strong muriatic acid with a hose attached. When found at 2:10 A.M., the generator was still smoking, which indicated that it had been placed there within the past few hours.

The following day, after obtaining a search warrant, the officers opened the trunk of Mr. Zike's car. Inside the trunk, they found a cooler containing coffee filters, hoses, duct tape, and a Pyrex glass dish. The coffee filters were the same type as those found on the side of the road, and the duct tape was the same kind as that wrapped around the Tupperware container found near the intersection.

Subsequently, Mr. Farris was arrested and charged with attempt to manufacture methamphetamine in violation of section 195.211. Specifically, the State charged that he knowingly attempted to manufacture methamphetamine "by possessing items used in the manufacturing of methamphetamine, knowing that it was a controlled substance." On April 30, 2002, a jury trial was held. At trial, Mr. Farris' defense was that he was at home watching television when Mr. Zike and Mr. Roe came by his house after Ms. Brand saw the car. He claimed that Mr. Zike and Mr. Roe picked him up to take him to meet his brother, so he and his brother could go to a bar after his brother got off work. Mr. Farris testified that he never smelled ether while he was in the car.

At the end of the trial, the jury found Mr. Farris guilty. The trial court sentenced him to seven years imprisonment. Thereafter, Mr. Farris filed a motion for new trial, which was denied. This appeal followed.

### Evidence Sufficient to Establish Guilt Beyond a Reasonable Doubt

■ In his first point, Mr. Farris argues that the trial court erred in overruling his

2. Although the parties refer to him as "William Sike," the correct spelling of his last name is "Zike."

motion for judgment of acquittal because the evidence was insufficient to prove his guilt of attempt to manufacture methamphetamine beyond a reasonable doubt. Specifically, Mr. Farris contends that the evidence presented was insufficient to prove that he committed a substantial step toward the commission of the offense by possessing items used in the manufacture of methamphetamine. Mr. Farris claims that the State failed to present sufficient evidence that would allow the jury to infer that he either actually or constructively possessed any of the items used to manufacture methamphetamine, which were found in and around the car in which he was riding.

This court's review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented " 'from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) (citation omitted). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the jury's verdict. *Id.* All contrary inferences are disregarded. *Id.* Reasonable inferences may be drawn from direct and circumstantial evidence. *See id.* at 412–13.

▪ Mr. Farris was convicted of attempt to manufacture methamphetamine in violation of section 195.211. An attempt to commit a crime has two elements: "(1) the defendant has the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999). " 'A **"substantial step"** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.' " *Id.* (quoting section 564.011). Conduct consti-

tuting a substantial step includes possession of materials designed specifically for an unlawful purpose or that could not serve a lawful purpose under the circumstances. *State v. Molasky*, 765 S.W.2d 597, 600–01 (Mo. banc 1989).

▪ To prove that Mr. Farris engaged in a substantial step through the possession of materials used to manufacture methamphetamine, this court applies "the same standard of actual or constructive possession in manufacturing cases as is used in possession cases." *State v. Rollett*, 80 S.W.3d 514, 521 (Mo.App.2002). The State had to establish two elements: (1) that Mr. Farris had "conscious and intentional possession of the substance, either actual or constructive," and (2) that he was aware of "the presence and nature of the substance." *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). Both elements of this test may be proven by circumstantial evidence. *Id.* Additionally, "[t]he two prongs of this test are not entirely independent." *Id.* at 588. If the State lacks proof of actual possession, "constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.*

▪ To prove constructive possession, the State must, "at a minimum," establish that "the defendant had access to and control over the premises where the materials were found." *Withrow*, 8 S.W.3d at 80. Where a defendant has exclusive control of the premises, this factor alone is sufficient to raise an inference of possession and control of the materials. *Id.* In this case, however, Mr. Farris did not have exclusive control of the premises since he was neither the owner nor the sole occupant of the car. Thus, to show that Mr. Farris, a person in joint control of the premises, had access to and control over the materials, the State must have presented "some in-

criminating evidence" that raised the inference of such knowledge and control. *Id.*

■■ Additional incriminating circumstances that, when taken together, support an inference of knowledge and control in a joint possession case include the "close proximity to the substance in plain view of the police," *Rollett,* 80 S.W.3d at 521; the presence of a strong smell of ether, *State v. Booth,* 11 S.W.3d 887, 892 (Mo.App. 2000); and "consciousness of guilt," *State v. May,* 71 S.W.3d 177, 184 (Mo.App.2002), which can be shown by "attempts to deceive the police, as in making a false exculpatory statement," *State v. Hibbert,* 14 S.W.3d 249, 253 (Mo.App.2000). The totality of the circumstances is considered in determining whether there are sufficient additional incriminating circumstances to prove possession. *May,* 71 S.W.3d at 184.

Here, the close proximity of Mr. Farris to the materials used in the production of methamphetamine, while alone is not sufficient to establish possession, *Withrow,* 8 S.W.3d at 80, is a circumstance that supports an inference of possession. *Rollett,* 80 S.W.3d at 521. The evidence indicates that Mr. Farris was one of three men who were at a remote location, late at night, where there was the active production of methamphetamine. The smoking generator containing muriatic acid with a hose attached, the towel with acid holes, the coffee filters, the duct tape, and the funnel made from a soda pop bottle were found at the site where Ms. Brand first saw the men parked on the side of the road. The five-gallon bucket of anhydrous ammonia and the Tupperware container, which contained methamphetamine that was still wet, sticky, and smelled strongly of ether, indicating it had just been made, were on the passenger side near the intersection through which two officers saw the car pass. Given the size, weight, and odor of a five-gallon bucket of anhydrous ammonia,

it is reasonable to infer that this item was very obvious to anyone in the car. It is also reasonable to infer that both items were thrown from the passenger side of the car. Although it is unclear whether Mr. Farris was sitting in the front or back seat, he was sitting on the passenger side of the car when it was pulled over by Sheriff Hughes.

Another incriminating circumstance is the presence of the odor of ether and Mr. Farris' statements concerning the odor. Before the police had even stopped the car, the officers were able to smell ether after the car had passed through the intersection. After the stop, the officers again smelled ether in the car. A "strong smell" of ether is incriminating evidence of possession. *Booth,* 11 S.W.3d at 892. Mr. Farris testified that he did not smell ether while he was in the car. The jury, however, could properly find his testimony not credible, *Purlee,* 839 S.W.2d at 588, and infer that Mr. Farris was aware of the presence of the ether because of the unmistakably strong odor. *State v. Fuente,* 871 S.W.2d 438, 442 (Mo. banc 1994). Moreover, the jury could infer consciousness of guilt from his false statement to the police about whether he smelled the ether. *See State v. Allen,* 817 S.W.2d 526, 528 (Mo.App.1991).

Adding to these incriminating circumstances are the false exculpatory statements Mr. Farris made to the police. Sheriff Hughes testified that after he stopped Mr. Zike's car, Mr. Farris, Mr. Zike, and Mr. Roe all told the same story. The men claimed to have been merely driving around together, drinking beer, and denied that they were at the location where methamphetamine was being manufactured. At trial, however, Mr. Farris told a different story about the length of time he was with Mr. Zike and Mr. Roe and his purpose for being with them. Mr.

Farris testified that he was drinking beer with Mr. Zike and Mr. Roe, but had joined them just before the police pulled them over. According to Mr. Farris' trial testimony, he was with Mr. Zike and Mr. Roe for only a short time before the stop and only because they were taking him to meet his brother at his brother's place of employment, so that he and his brother could then go to a bar.

■ The jury could have easily deemed both of Mr. Farris' exculpatory statements false. Although beer was found in Mr. Zike's car, it was hot beer. The jury could have reasonably disbelieved that the men were driving around on a summer night drinking hot beer. Three people were observed at the site where the methamphetamine was being produced and three people, including Mr. Farris, were apprehended thirty minutes later in the same car. During those thirty minutes, multiple officers drove the area and the roads connecting with the road on which the car was originally seen, and they did not see any other vehicles in the area. In light of Mr. Farris' original admission that he had been "driving around" with Mr. Zike and Mr. Roe and his subsequent inconsistent exculpatory statement, a reasonable inference can be made that the three individuals apprehended were the same as those Ms. Brand had observed earlier. "When proven false, exculpatory statements evidence a consciousness of guilt." *Hibbert*, 14 S.W.3d at 253.

Considering the totality of the circumstances, there is sufficient incriminating evidence to find that Mr. Farris had constructive possession of the materials used to manufacture methamphetamine found along the roadway, near the intersection, and in the trunk, and he was aware of the presence and nature of their use. Accordingly, there was sufficient evidence from which the jury could have found, beyond a reasonable doubt, that Mr. Farris was guilty of attempt to manufacture methamphetamine. Mr. Farris' first point is denied.

## Plain Error in Failing to Define Possession in Verdict Director

■ In his second point, Mr. Farris argues that the trial court plainly erred in submitting the verdict director for attempt to manufacture methamphetamine without defining possession. The instruction stated, in part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 27, 2001, in the County of Chariton, State of Missouri, the defendant possessed items used in the manufacture of methamphetamine, and

Second, that such conduct was a substantial step toward the commission of the offense of manufacturing methamphetamine by combining the ingredients, and

Third, that defendant engaged in such conduct with the purpose of committing the offense of manufacturing a controlled substance,

then you will find the defendant guilty of attempting to manufacture methamphetamine, a controlled substance.

During the instruction conference, Mr. Farris objected to this verdict director because it did not include a definition of possession. The definition of possession Mr. Farris contended should have been included is found in MAI–CR3d 333.00, the pattern instruction for the general form of definitions. MAI–CR3d 333.00 reads, in pertinent part:

**Possess, Possessed, or Possession.**

. . . .

[*As used in Chapter 195* ] means either actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. (Possession may also be sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint.)

The trial court found that the definition of possession was neither required nor authorized to be defined under the Notes on Use to MAI–CR3d 325.06.2, the pattern jury instruction for attempt to manufacture a controlled substance, or the Notes on Use to MAI–CR3d 333.00. Therefore, the trial court overruled Mr. Farris' objection and submitted the attempt to manufacture methamphetamine instruction without including the MAI–CR3d 333.00 definition of possession. Mr. Farris did not raise the issue of the trial court's failure to define possession in his motion for new trial. Because Mr. Farris did not raise this allegation of error in his motion for new trial, he asks this court to conduct plain error review.

 Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." " 'Plain error' is evident, obvious and clear error." *State v. Bozarth,* 51 S.W.3d 179, 181 (Mo.App.2001). To determine whether to conduct plain error review, this court first determines whether the claim of plain error facially "establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *Id.* If this court finds that the claim of plain error is facially established, this court then determines "whether manifest injustice or a miscarriage of justice actually occurred." *Id.*

 "Instructional error is rarely plain error." *State v. Shockley,* 98 S.W.3d 885, 891 (Mo.App.2003). To constitute plain error, " ' "the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice." ' " *State v. Doolittle,* 896 S.W.2d 27, 29 (Mo. banc 1995) (citations omitted). A manifest injustice occurs as a result of instructional error where " ' "it is apparent to the appellate court that the instructional error affected the jury's verdict." ' " *Id.* (citations omitted). Mr. Farris has the burden of demonstrating that he suffered manifest injustice or a miscarriage of justice. *State v. Harney,* 51 S.W.3d 519, 533 (Mo.App.2001).

The trial court was correct that MAI–CR3d 325.06.2, the pattern jury instruction for attempt to manufacture a controlled substance, and its accompanying Notes on Use do not list possession as one of the terms that is required to be defined in all cases or is authorized to be defined by the court on its own motion or upon written request of the parties. Similarly, the Notes on Use to MAI–CR3d 333.00, the pattern instruction for the definitions of terms, do not provide that possession is required or authorized to be defined in this case.

Mr. Farris, however, reads Note 2D of the Notes on Use to MAI–CR3d 333.00 as requiring possession to be defined. Note 2D states:

> If a definition of a crime is required, or if it is required or permitted by A or B above, subject to Notes on Use 3 hereafter, use the definition of that

crime as it appears in MAI–CR 3d 333.00. If the crime is not defined in MAI–CR 3d 333.00, an appropriate definition of the crime shall be drafted and submitted to the Court for approval. For guidance, an examination of the appropriate statute is suggested, as well as any applicable verdict directing instruction and its Notes on Use. If the Notes on Use to the verdict directing instruction applicable to the crime being defined require that a term be defined, then that term must be defined and included in the definition of the crime; if those Notes on Use permit the defining of a term, that term may be defined upon the request of the state or the defendant or on the Court's own motion. Mr. Farris concedes that the definition of possession was not required or permitted by subsections A and B of Note 2. Instead, he argues that possession is part of the definition of the crime of attempt to manufacture or produce a controlled substance and that the phrase, "If a definition of a crime is required" requires that a definition of possession be given. The plain language indicates, however, that this subsection advises *which* definition of a crime should be used "[i]f a definition of the crime is required." Note 2D does not advise *when* the definition of a crime is required.

■■■ That the pattern instructions and their Notes on Use do not require or authorize the definition of possession in the verdict director *for the crime of attempt to manufacture a controlled substance* does not end the inquiry, however. "MAI–CR and its Notes on Use are 'not binding' to the extent they conflict with the substan-

tive law." *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997). Therefore, "[i]f an instruction following MAI–CR3d conflicts with the substantive law, any court should decline to follow MAI–CR3d or its Notes on Use." *Id.*

■■■ Mr. Farris argues that MAI–CR3d 325.06.2 conflicts with substantive law because possession is an element of the crime of attempt to manufacture methamphetamine and, therefore, the verdict-directing instruction should include a definition of possession. For a verdict-directing instruction to be sufficient, it " 'must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged.' " *Doolittle,* 896 S.W.2d at 30 (quoting *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988)). Mr. Farris was charged with attempt to manufacture the controlled substance of methamphetamine in violation of section 195.211.1.[3] The elements the State had to prove were that Mr. Farris had the intent to manufacture methamphetamine, and that Mr. Farris did an act that was a substantial step toward manufacturing methamphetamine. *State v. Neel,* 81 S.W.3d 86, 93 (Mo.App.2002). The substantial step charged was that Mr. Farris possessed items used in the manufacture of methamphetamine.

"A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act." Section 562.011.1. Thus, for Mr. Farris' possession to constitute criminally liable conduct, his possession had to be a voluntary act. *State v. Jones,* 865 S.W.2d 658, 662 (Mo.

---

**3.** Section 195.211.1 provides:

Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

banc 1993) (citing section 562.011.1 [4]). "Possession is a voluntary act if the possessor knowingly procures or receives the thing possessed, or having acquired control of it was aware of his control for a sufficient time to have enabled him to dispose of it or terminate his control." Section 562.011.3. The definition of possession, as used in section 195.211.1, includes this knowledge requirement, as it provides that "a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance." Section 195.010(34). Where, as in this case, Mr. Farris did not have actual possession of the items, section 195.010(34) provides that "[a] person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it."

▬▬ To establish constructive possession, as it is defined in section 195.010(34), the Supreme Court requires the State to prove that the defendant "had access to and control over the premises where the materials were found." *Withrow*, 8 S.W.3d at 80. Because Mr. Farris did not have exclusive control over the premises where the materials were found, the Supreme Court requires further evidence "to connect him to the manufacturing process." *Id.* This is because "[t]he mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case." *Id.* Likewise, "proximity to the contraband alone fails to prove ownership." *Id.* Rather, there must also "be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control." *Id.*

This incriminating evidence establishes the defendant's knowledge and control of the items, which bear directly on whether possession of the items is a voluntary and, therefore, criminal, act. Section 562.011.1 and .3. Thus, Mr. Farris' knowledge and control of the items were facts necessary to find possession. The MAI–CR3d 333.00 definition of possession would have required the jury to find these necessary facts of knowledge and control, as it defines constructive possession as when a person "has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." Possession was an essential element of the crime of attempt to manufacture methamphetamine, as it was the only substantial step alleged. By not including the MAI–CR3d 333.00 definition of possession, the verdict director failed to require the jury to find " 'every fact necessary to constitute essential elements of [the] offense charged.' " *Doolittle*, 896 S.W.2d at 30 (quoting *Ward*, 745 S.W.2d at 670).

The Supreme Court has found that the failure to define possession in a verdict director, where possession is an essential element of the offense charged, is prejudicial error. *Jones*, 865 S.W.2d at 662. In *Jones*, Mr. Jones was charged with unlawful possession of a concealable firearm, in violation of section 571.070.1. *Id.* at 661. The elements of the crime are that the defendant has been convicted of a dangerous felony and " 'has any concealable firearm in his possession.' " *Id.* (quoting section 571.070.1). While MAI–CR3d 331.28, the pattern verdict director for the crime,

---

**4.** *Jones* cites the 1986 version of section 562.011.1, but the statute has not been amended.

set out these elements, the version of the pattern instruction in effect at that time did not include a definition of possession, nor did the Notes on Use specify that possession was to be defined. *Id.*

Nevertheless, the Supreme Court held that possession should have been defined. *Id.* at 662. Citing section 562.011.1 and .3, the Court noted that possession is a voluntary act and, therefore, constitutes criminally liable conduct, where the " 'possessor knowingly procures or receives the thing possessed, or having acquired control for a sufficient time to have enabled him to dispose of it or terminate his control.' " *Id.* Thus, the Court found that the defendant's knowledge of the presence of the concealed firearm was an element of the crime of unlawful possession of a concealed firearm. *Id.* Without a definition of possession, however, the jury was not required to find that Mr. Jones knew of the presence of the firearm, an element of the crime. *Id.* Because " '[a] verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged,' " the Court held that submitting MAI–CR3d 331.28 without including a definition of possession was prejudicial error. *Id.* (quoting *Ward,* 745 S.W.2d at 670).

Likewise, in this case, the failure to include a definition of possession, which would have required the jury to find the facts necessary to constitute the essential substantial step element, was prejudicial error. This finding of error in the court's failure to define possession when it constitutes the substantial step in MAI–CR3d 325.06.2 is supported by the fact that when the term "possession" is used in any other MAI–CR3d 325 Series verdict director for crimes charged under the Narcotic Drug Act, the verdict director includes the MAI–CR3d 333.00 definition of the term.[5] Mr. Farris has facially established substantial grounds for this court to believe that he has suffered manifest injustice or a miscarriage of justice from this error. *See Bozarth,* 51 S.W.3d at 181.

■ Because this court finds substantial grounds for believing that manifest injustice or a miscarriage of justice has occurred, this court exercises its discretion to determine whether the failure to define possession in the verdict director actually resulted in manifest injustice or a miscarriage of justice. *Id.* " 'In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict.' " *Doolittle,* 896 S.W.2d at 29. In this case, possession was not only an essential element of the crime charged, but it was a *contested* essential element. The defense contended that the State failed to prove that Mr. Farris had the requisite knowledge and control for constructive posses-

**5.** See MAI–CR3d 325.02—Controlled Substances: Possession; MAI–CR3d 325.08—Controlled Substances: Possession with Intent to Distribute, Deliver, or Sell; MAI–CR3d 325.14—Controlled Substances: Trafficking in the Second Degree: Other than Methamphetamine; MAI–CR3d 325.15—Controlled Substances: Trafficking in the Second Degree: Methamphetamine; MAI–CR3d 325.16—Controlled Substances: Trafficking in the Second Degree: 3,4—Methylenedioxymethamphetamine, "Ecstasy"; MAI–CR3d 325.22—Controlled Substances: Possession of Drug Paraphernalia With Intent to Use; MAI–CR3d 325.24—Controlled Substances: Possession of Drug Paraphernalia With Intent to Deliver or Sell; MAI–CR3d 325.32—Controlled Substances: Possession of Methamphetamine Precursor Drug with Intent to Manufacture; and MAI–CR3d 325.34—Possession of a Chemical with the Intent to Create a Controlled Substance or Controlled Substance Analogue.

sion, as defense counsel argued that Mr. Farris became a passenger in Mr. Zike's car after 11:30 P.M., subsequent to the time Ms. Brand saw three individuals on the side of the road; he did not know about the items found in the trunk; and there was a lack of evidence that Mr. Farris was the person who threw the items out of the car window.

The resulting prejudice is that, without a definition of possession explaining what facts are necessary to find constructive possession, the State was excused from its burden of proof on a contested element of the crime. *See id.* at 29–30. Indeed, in its closing argument, the State addressed the evidence supporting the element of possession by arguing, "Possession? It came out of the vehicle the defendant was riding in. It was thrown from the side of the vehicle that the defendant was riding in." The State's argument led the jury to believe that the element of possession was proved by merely establishing Mr. Farris' proximity to the items as a passenger in the car. Not only is the State's concept of possession contrary to the statutory definition of constructive possession contained in section 195.010(34), but it was also rejected by the Supreme Court in *Withrow,* 8 S.W.3d at 80.[6]

■ "[W]here a verdict director effectively omits an essential element of the offense, such an instruction rises to the level of plain error if the evidence in the case fails to establish the existence of the

omitted element 'beyond serious dispute.' " *Harney,* 51 S.W.3d at 533–34 (citation omitted). In this case, Mr. Farris was one of three persons in the car and was not the owner of the car. Several of the items found were in the locked trunk of the car. While the officers found other items on the passenger side of the road and Mr. Farris was one of two passengers in the car, it is unclear whether he was in the front or back seat, and it is unclear from which passenger seat the items were thrown. It is also disputed whether Mr. Farris was with the other two men when Ms. Brand saw them parked on the side of the road, engaged in the manufacturing process. Although this court has found that there was sufficient additional incriminating circumstances to prove Mr. Farris' constructive possession of the items beyond a reasonable doubt, this court does not find that the evidence on this issue was "beyond serious dispute."

Because this evidence was seriously disputed, and the State argued an incorrect statement of the law as to the standard for possession, this court cannot say with certainty how a reasonable jury would have determined the issue had it been instructed, per MAI–CR3d 333.00, that a person has constructive possession where that person "has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." The failure to define possession allowed the jury to return a verdict without having to

6. The State argues that the failure to define possession did not result in prejudice because the word was used in its ordinary, common-sense meaning and, "[w]here an instruction uses a word in its ordinary, common-sense meaning, then no confusion occurs simply because the word is not defined." *State v. Ludwig,* 18 S.W.3d 139, 143 (Mo.App.2000). The dictionary definition of "possess" is "to have and hold as property," "have a just right to" or "be master of: OWN." WEBSTER'S THIRD

NEW INT'L DICTIONARY 1770 (1993). In contrast, the legal definition of possession divides the concept into two types, actual and constructive, and each type is based on the alleged possessor's knowledge and degree of control. The term "possession" was not used in its ordinary, common-sense meaning in the instruction, nor did the State refer to the ordinary, common-sense meaning of possession when it essentially argued that proximity equals possession.

find that Mr. Farris had the requisite knowledge and control to meet the statutory definition of constructive possession and, as such, resulted in a manifest injustice and a miscarriage of justice. *See Doolittle,* 896 S.W.2d at 30. Mr. Farris' second point is granted.

The trial court's judgment is reversed, and the cause is remanded for a new trial.

All concur.