STATE of Missouri, Plaintiff–
Respondent,

v.

Keith A. VANORSDEL, Defendant–
Appellant.

No. SD 31926.

Missouri Court of Appeals,
Southern District,
Division Two.

May 23, 2013.

Ellen H. Flottman, Columbia, MO, for appellant.

Jessica P. Meredith, Jefferson City, MO., for respondent.

DON E. BURRELL, J.

Keith VanOrsdel ("Defendant") appeals his conviction of attempted enticement of a child. *See* section 566.151.[1] In his sole point on appeal, Defendant argues the trial court erred in overruling his motion to suppress statements he made and evidence obtained following an investigatory stop of his vehicle as the illegal fruit of an unreasonable search and seizure. Because the officer involved had specific, articulable facts that provided a reasonable suspicion that criminal activity was afoot, we affirm.

### Standard of Review

We review

a trial court's ruling on a motion to suppress in the light most favorable to the ruling, disregarding any contrary evidence or adverse inferences. The inquiry is limited to determining if the decision is supported by substantial evidence, whether that evidence is presented at the suppression hearing itself or during trial. While "a trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous," a determination as to whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo.*

State v. Waldrup, 331 S.W.3d 668, 672 (Mo. banc 2011) (quoting *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007)) (additional internal citations omitted).

### Factual and Procedural Background

Viewed in the light most favorable to the trial court's denial of Defendant's motion

---

1. All statutory references are to RSMo Cum.    Supp.2006, unless otherwise indicated.

to suppress, the following evidence was adduced at the motion hearing and at trial.

In 2008, Defendant, using the screen name "eg_over_ez," engaged in a chat room conversation with "sassyntl." "sassyntl" was a St. Clair County Sheriff's Office deputy posing as a thirteen-year-old female. Over the course of their chats, Defendant revealed that his first name was Keith, and he was a twenty-five-year-old male. Defendant told "sassyntl" that he was in the Air Force, that he was stationed in Hawaii, but that he was currently living in Springfield. At some point, Defendant began asking "sassyntl" personal questions, such as if she had a boyfriend or if she had engaged in certain sexual activities. From that point on, all of their conversations were sexual in nature. Defendant eventually discussed meeting "sassyntl" for sex. Defendant also sent "sassyntl" links to pornographic material.

Eventually, Defendant and "sassyntl" made a plan to meet up at the park behind the Osceola pool on the morning of May 29. Defendant told "sassyntl" that he would be driving a gray car.

At 8:30 a.m. on the morning of the 29th, St. Clair County officers stationed themselves throughout the park area, and a female communications officer made up to look like a young girl was stationed at a picnic table near the pool. Around 10:00 a.m., a gray SUV drove past the park and slowed while passing its north entrance. The driver, later identified as Defendant, "looked around like he was looking for something" then continued driving past the park. The gray SUV driven by Defendant then returned from the opposite direction. This time, the vehicle turned into

the park, again driving slowly. Defendant drove on the horseshoe-shaped road around the pool, traveling "very much" slower than the posted speed limit. Officers observed Defendant "hit[ting] his brakes" and "looking over his shoulder." The vehicle then exited the park without approaching the communications officer stationed at the picnic table. From the time the officers set up in the park at 8:30 a.m. until Defendant arrived, only one other vehicle traveled through the park. Officers recognized the other driver, who stopped and talked with them.

Deputy Bryan Roth was stationed in a patrol car approximately one-quarter mile outside of town. Another officer radioed to advise him that Defendant's gray car was traveling toward his location. When the vehicle passed Deputy Roth, he could not determine the state listed on the license plate because the edges of the plate were obscured by a cover. After Deputy Roth pulled Defendant's vehicle over, he noted that the car had Hawaii license plates. Defendant told Deputy Roth that "he'd moved to Springfield, Missouri, and he was just out sightseeing, driving around trying to see the water of the lake." Defendant gave Deputy Roth his Air Force identification card and driver's license. After checking for any outstanding warrants,[2] Deputy Roth explained the Internet investigation they were conducting and "asked him if he knew anything about it." When Defendant answered affirmatively, Deputy Roth asked "So, it was you that's supposed to meet the 13–year–old in the park?" Defendant answered, "Yes."

Defendant drove his vehicle to the sheriff's office, where he waived his *Miranda*[3] rights and consented to a search of his

---

**2.** There is no evidence in the record that any warrant regarding Defendant had been issued at the time Deputy Roth stopped Defendant's vehicle.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

motel room, vehicle, and computer. The Yahoo chats between "eg_over_ez" and "sassyntl" were recovered from a computer seized from Defendant's motel room. A detective specializing in computer forensics also recovered Google searches from that computer for "Osceola police stings" and "osceola missouri [sic] police stings."

Defendant filed a motion to suppress the evidence obtained after the stop of his vehicle. The trial court overruled Defendant's motion, finding that based on the totality of the circumstances, Deputy Roth had "a valid suspicion and need to investigate further" at the time of the stop. Following a bench trial, Defendant was found guilty and received a ten year sentence. This appeal timely followed.

### Analysis

In his sole point on appeal, Defendant argues the trial court erred in overruling his motion to suppress statements and evidence obtained after he was stopped without a warrant because Deputy Roth "did not have reasonable suspicion to stop [Defendant's] vehicle based on a particularized suspicion of criminal activity[.]" We disagree.

The Fourth Amendment guarantees citizens the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV;[4] *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). Deputy Roth's stop of Defendant's car constituted a seizure for purposes of the Fourth Amendment. Generally, a search or seizure requires the issuance of a warrant based upon probable cause. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999).

▇▇▇ One of the many recognized exceptions to the warrant requirement is a

"*Terry* stop"[5] stop based upon reasonable suspicion that the person stopped is engaged in criminal activity. *Deck*, 994 S.W.2d at 534. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22, 88 S.Ct. 1868.

▇▇▇ Reasonable suspicion is a less demanding standard than probable cause. *Pike*, 162 S.W.3d at 473. "[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause ... [and] can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Reasonable suspicion is determined by looking at the totality of the circumstances to determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a 'reasonable suspicion' of criminal activity." *State v. Berry*, 54 S.W.3d 668, 673 (Mo.App. E.D.2001) (quoting *White*, 496 U.S. at 328, 110 S.Ct. 2412).

▇▇▇ Here, Deputy Roth and the St. Clair County officers stationed in the park had a reasonable suspicion at the time of the *Terry* stop based upon specific, articulable facts that Defendant was the individ-

---

4. The Missouri Constitution contains a parallel guarantee. Mo. Const. art. I, sec. 15.

5. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)

ual who had planned to meet "sassyntl" for the purpose of engaging in illegal sexual activity with her.[6] The officers were aware of the content of the chat room messages exchanged by "eg_over_ez" and "sassyntl." Defendant was in the park near the Osceola pool. Defendant arrived around 10 a.m., a time consistent with the "ten or eleven o'clock" window within which "eg_over_ez" and "sassyntl" had planned to meet.[7] Defendant was driving a gray car. Defendant originally drove slowly past the park and looked around. Defendant then returned and entered the park, still driving slowly and "looking over his shoulder." Only one other car drove through the park that morning, and officers recognized that driver.

Defendant argues that Deputy Roth stopped him based on his inability to read Defendant's license plate, and that once Deputy Roth had confirmed the state from which the license plate originated, the purpose for the investigatory stop had been completed.[8] The argument is unpersuasive because it attempts to isolate the obscured license plate from the other information known to the officers at the time of the stop and treat the stop as if it had been made to investigate a traffic violation. That information—all acquired prior to the observation of the obstructed license plate—was sufficient in itself to justify the warrantless stop, which was made to investigate whether the vehicle's driver was "eg_over_ez," not to investigate a possible license plate violation.[9]

The stop of Defendant's vehicle and the investigation that followed was not in violation of Defendant's Fourth Amendment rights. The trial court did not clearly err in denying Defendant's motion to suppress and in allowing the fruit of that investigation into evidence at Defendant's trial.

6. Although Deputy Roth did not personally witness Defendant in the park, he acted upon information provided to him by another officer. "When a law enforcement officer effectuates a *Terry* stop, he need not have personally observed facts amounting to reasonable suspicion provided he acted on information provided by another officer who is shown to have had reasonable suspicion to make the stop." *State v. Miller*, 894 S.W.2d 649, 652 (Mo. banc 1995).

7. "eg_over_ez" told "sassyntl" that it would take him an hour and a half to two hours to drive from Springfield to meet her, and he would leave immediately following their 8:00 a.m. chat on May 29th. During that 8:00 a.m. chat, "eg_over_ez" discussed driving directions on how to get to the Osceola pool park where they had planned to meet. "eg_over_ez" 's last chat with "sassyntl" ended at 8:22 a.m.

8. Deputy Roth testified that he believed the obstruction constituted a violation of the requirement that a license plate be "plainly visible." *See* section 301.130.5.

9. Even if we were to posit that the stop was made solely to investigate the license plate, Deputy Roth would have been justified in expanding the scope of the stop when he saw that the plate was issued by Hawaii, the state in which "eg_over_ez" said he was currently stationed. Defendant's driver's license revealed that his first name was Keith, the first name disclosed by "eg_over_ez." *See State v. Dow*, 375 S.W.3d 845, 851–52 (Mo.App. W.D. 2012) (reasonable investigation of routine traffic stop includes obtaining a driver's license). And, in addition to producing his driver's license, Defendant presented Deputy Roth with his Air Force identification. All of this information was consistent with the personal information "eg_over_ez" had revealed to "sassyntl" during their chats, and Deputy Roth had knowledge of these identifiers at the time he stopped Defendant's vehicle. These facts Deputy Roth acquired after asking Defendant for his driver's license served only to bolster his previous reasonable suspicion that Defendant was the individual who had planned to meet "sassyntl" in the park for purposes of engaging in illegal sexual activity with her.

The judgment of conviction and sentence is affirmed.

JEFFREY W. BATES, and MARY W. SHEFFIELD, JJ., CONCUR.