**STATE of Missouri, Respondent,**

v.

**Jean Marie SOLIS, Appellant.**

No. SD 32312.

Missouri Court of Appeals, Southern District, Division One.

Oct. 4, 2013.

586

Alexa I. Pearson, of Columbia, Missouri, for appellant.

Chris Koster, Attorney General and Mary H. Moore, Assistant Attorney General, of Jefferson City, Missouri, for respondent.

## WILLIAM W. FRANCIS, JR., C.J.

A jury convicted Jean Marie Solis ("Solis") of the class B felony of attempt to manufacture a controlled substance in violation of section 195.211, RSMo Cum.Supp. (2003).[1] Solis was sentenced to eighteen years in prison. Solis alleges the trial court erred in overruling her motion to suppress and admitting that evidence at trial, and that the State did not present sufficient evidence to prove each element of the charge beyond a reasonable doubt. This appeal followed. Finding no merit to Solis's claims, we affirm the judgment and sentence of the trial court.

### Facts and Procedural Background

Viewed in the light most favorable to the trial court's denial of Solis's motion to suppress and the verdict, the following evidence was adduced at the motion hearing and at trial. *See State v. VanOrsdel,* —— S.W.3d ——, ——, No. SD31926, 2013 WL 2255868, at *1 (Mo.App.S.D. May 23, 2013); *State v. McDonald,* 321 S.W.3d 313, 315 (Mo.App.S.D.2010).

At the time of trial, Officer Scott Parish ("Officer Parish") had been a certified law enforcement officer with the Lake Area Narcotics Enforcement Group ("task force") for approximately twelve years. The task force investigated narcotics-related incidents in six counties, including Crawford County.[2] Officer Parish had investigated "hundreds" of methamphetamine labs in his twelve-year career. In the year before Solis's arrest, the task force had investigated fifty-four methamphetamine labs, either active or dumpsites, in Crawford County alone.

On April 21, 2011, Officer Parish was at the Walmart in Cuba, Crawford County, Missouri, to pick up a soda. As he went back to his vehicle, Officer Parish saw Solis and Daniel Means ("Means") enter the Walmart parking lot and park their vehicle. Officer Parish had previous encounters with Solis and Means involving methamphetamine laboratories and arrests. Officer Parish waited in his vehicle, and moments after Solis entered Walmart, Officer Parish was alerted by the "National Precursor Log Exchange" system ("NPLEx")[3] that Solis had just purchased 120 milligrams of pseudoephedrine. Solis then exited Walmart with a small bag in her hand and got back into the vehicle. Means then exited the vehicle and went into Walmart alone. When Means came out, Officer Parish did not see a bag in his hand, so Officer Parish called the Walmart Pharmacy and confirmed that Means had also purchased pseudoephedrine.

---

1. Unless otherwise specified, all references to statutes are to RSMo 2000.

2. The task force's parent agency is the Camden County Sheriff's Office.

3. The record refers to this system as "IM-PLEX." For purposes of this opinion, we will use its correct abbreviation of "NPLEx."

NPLEx is a national data base which tracks all purchases of products containing pseudoephedrine. Missouri is a member of NPLEx. A buyer must present identification at the time of purchase of any product containing pseudoephedrine, whereupon the buyer's name is immediately recorded into the national database. Law enforcement officers have access to the database and use it as a tool. An officer can enter an individual's name into the system (i.e., put an individual "on a watch") and they will be notified if the individual has purchased or been blocked from purchasing.

Officer Parish then called Sergeant Andrew Swearingin with the Missouri State Highway Patrol and Officer Adam Carnal with the Cuba Police Department for assistance in what he perceived and believed to be a narcotics investigation. All three officers followed Solis and Means, in their separate vehicles, to a storage unit in Crawford County; Solis was the driver of the vehicle. As the officers pulled up, Solis was near the vehicle in front of an open storage unit, Number 15, and Means appeared to throw something into the vehicle.

When Officer Parish first arrived, he made contact with Solis and Means and asked about the transactions at Walmart; Solis was deceptive and not forthcoming about what happened. Officer Parish then asked permission to search the vehicle Solis was driving and the storage unit. Solis gave verbal consent to the requested search, and was cooperative and cordial; Officer Parish did not request a signed consent. From the vehicle, officers seized a box of pseudoephedrine and a bottle of Heet.[4] Heet is commonly used as a solvent in manufacturing methamphetamine.

From the storage unit, officers seized lye, mason jars with modified lids, tubing, a transfer hose, and a propane tank. A blue duffle bag containing fertilizer stakes, acid, lye, and tubing was also seized. In relation to manufacturing methamphetamine, these items could be used in the manufacture of methamphetamines; for example, lye is used in the absence of anhydrous ammonia, and propane tanks can be used for storing anhydrous ammonia or to cool down gas ammonia into a liquid. The search also revealed matchbooks with the striker plates removed. The striker plates are used in the "Red" and "Black" methamphetamine manufacturing methods.[5]

A search of Means resulted in officers finding a baggie that field testified positive for the presence of methamphetamine, and a box of pseudoephedrine pills in Means' back pocket.

Solis was charged by amended information in the Circuit Court of Crawford County as a prior and persistent offender with attempt to manufacture a controlled substance, in violation of section 195.211. Prior to trial, Solis's defense counsel filed a "Motion to Suppress Evidence," which was seized from her "personal vehicle and her rented storage shed." A hearing was held on the motion and it was denied. During the jury trial, Solis's counsel objected to the admission of this evidence; the trial court overruled the objection.

The jury convicted Solis of attempt to manufacture a controlled substance. The trial court sentenced Solis as a prior and persistent offender.

Solis contends the trial court erred in: (1) overruling her motion to suppress and admitting evidence at trial that was seized from her truck and storage unit because the "investigatory detention" was not based on reasonable suspicion of criminal activity, Solis did not voluntarily consent to a search, and Officer Parish did not have statutory authority to engage in this conduct outside of Camden County where he worked; and (2) the State did not present sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. The State responds that: (1)

4. An automotive gas-line antifreeze and water remover.

5. Popular ways to manufacture methamphetamine include the "P2B," "Red," "Black," "Birch Nazi," and "Bottle" methods. The Bottle method, where all the ingredients are placed into a 20–ounce soda bottle, was popular in the lake area. Officer Parish had investigated labs using each of these methods.

the search was valid because Solis gave her consent for the search; and (2) there was sufficient evidence to prove each element of the charged offense.

The primary issues necessary for resolution of this appeal are:

1. Did the trial court err in overruling Solis's motion to suppress and in admitting evidence at trial that was seized from Solis's truck and storage unit?

2. Was there sufficient evidence to support the conclusion that Solis committed the crime of attempted manufacture of methamphetamine?

### Point I: Motion to Suppress

In her first point, Solis claims the trial court erred in overruling her motion to suppress. Specifically, she contends the investigation done by the officers violated her right to be free from unreasonable search and seizure because it was conducted without reasonable suspicion. Solis also argues she did not voluntarily consent to a search of her vehicle. In the alternative, Solis argues that the search exceeded the scope of the consent, and Officer Parish was acting outside of his jurisdiction so he did not have lawful authority to conduct the detention, search, or arrest.

### Standard of Review

■■■ "A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* (internal citation omitted). Whether conduct violates the Fourth Amendment is a question of law that this Court reviews *de novo*. *Id.*

### Analysis

■■■ Solis first argues "the investigatory detention was unlawful since it was not based on reasonable suspicion and the officer's belief that criminal activity was afoot was admittedly based on past encounters." "The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures." *Id.*

Under the principles outlined in *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), a police officer may make an investigatory stop of a person, in the absence of probable cause, when the officer has a reasonable suspicion that the person is engaged in criminal activity. For such a stop to be permissible under the Fourth Amendment, it must be based on reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity.

*State v. Hawkins*, 137 S.W.3d 549, 557 (Mo.App.W.D.2004) (internal quotation and citation omitted).

■■■ Reasonable suspicion is an objective determination based on the totality of the circumstances, including whether the officer had a basis for suspecting legal wrongdoing. *Id.* "A suspicion is reasonable when the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (internal quotation and citation omitted). Knowledge of a person's prior criminal involvement cannot *alone* provide the requisite "reasonable suspicion," but can be *one* factor in the reasonable suspicion analysis. *State v. Grayson*, 336 S.W.3d 138, 146 (Mo. banc 2011).

■■■ Here, there was reasonable suspicion for Officer Parish to *talk* to Solis and *investigate* based on her behavior, along

with Means' behavior, at Walmart: Solis entering Walmart alone to purchase pseudoephedrine and returning to her vehicle; Means entering Walmart alone to purchase pseudoephedrine; neither Means nor Solis making any other purchases in Walmart; an alert by NPLEx that Solis had just purchased 120 milligrams of pseudoephedrine; and confirmation from Walmart Pharmacy that Means also purchased pseudoephedrine. Officer Parish testified two people purchasing pills at the same time is an indicator that manufacture of methamphetamine is going to occur. *See State v. Brand,* 309 S.W.3d 887, 895 (Mo. App.W.D.2010) (holding officer, through his training, knew camping fuel and lithium batteries were often used together to manufacture methamphetamine; such evidence, when looking at the totality of the circumstances, including the expertise of law enforcement, makes this behavior seem "quite unusual."). Another fact known to Officer Parish was his previous encounters with Solis and Means involving methamphetamine laboratories and arrests. Officer Parish's knowledge of Solis's prior criminal activity involving methamphetamine laboratories "is a permissible factor to consider in determining whether articulable suspicion existed." *Hawkins,* 137 S.W.3d at 558.

Officer Parish was able to point to specific facts and rational inferences that provided the requisite reasonable suspicion to follow Solis to her storage unit and request to search her vehicle and storage unit.

■■■■■■ With respect to the search, the State contends the officers conducted a valid search of Solis's storage unit and truck based on Solis's consent to the search without a search warrant. Solis argues the evidence should have been suppressed because she did not voluntarily consent to a search.

As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. However, there are exceptions to this general rule, including the consensual search exception. A search conducted pursuant to a valid consent is constitutionally permitted. To be valid, consent must be given by someone with authority to do so and must be voluntary....

Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. This determination involves a consideration of a number of factors, including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in custody, whether there was any fraud on the part of the officers, and the evidence of what was said and done by the person consenting. The officer is not required to tell the person he or she can refuse to give consent to search.

*State v. Mathis,* 204 S.W.3d 247, 258 (Mo. App.E.D.2006) (internal citations omitted).

■■■■ The evidence before the trial court established that Solis voluntarily gave Officer Parish consent to search her truck and storage unit. Officer Parish testified he asked for consent "pretty close after the Hi Jean, the pleasantries were stated then we started talking about why I was there.... [T]hat being said[,] she denied any wrong-doing whatsoever.... At that point in time then I asked for consent." Officer Parish and Solis were familiar with each other, and at the storage unit that day, she was very cooperative

and cordial with Officer Parish.[6] Solis then granted verbal consent to the search.[7] While Solis claims she told officers they "couldn't search anything," "[t]his Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Sund,* 215 S.W.3d at 723.

The evidence suggests the encounter and conversation was brief, pleasant, and Officer Parish asked Solis once for permission to conduct the search. *See Mathis,* 204 S.W.3d at 258. There was no evidence the officers touched Solis, used coercive language, or a coercive tone to obtain consent to the search; nor was there any evidence the officers emphasized their authority, displayed a weapon,[8] or perpetrated a fraud to gain Solis's consent. *See State v. Ashby,* 339 S.W.3d 600, 604 (Mo. App.E.D.2011).

■ Solis further argues Officer Parish did not have reasonable suspicion of criminal activity "to detain Ms. Solis" because his suspicion was based on "past events and activity, without indicating that there was any ongoing investigation involving her or Means, and had not seen them engage in unlawful behavior." First, we have already determined Officer Parish's suspicion was reasonable based on articulated facts. While Solis's past events and

activity may have been one factor considered by Officer Parish, it was not the only factor—it was one of many. *See Grayson,* 336 S.W.3d at 146. In addition, there was no evidence Solis was detained until the officers discovered the items used to manufacture methamphetamine in the vehicle and storage unit.[9]

■ Finally, Solis argues Officer Parish was acting outside of his jurisdiction and did not have lawful authority to conduct the detention, search, or arrest. In support, Solis cites section 195.505, which provides for the formation of a multijurisdictional enforcement group for the purpose of "intensive professional investigation of computer, internet-based, narcotics and drug law violations." § 195.505.1. Solis argues under section 195.505, Officer Parish had to notify the chief of police or county sheriff prior to her arrest, and the State did not prove that Officer Parish contacted the proper authorities to allow him to arrest Solis as required by section 195.505. While section 195.505.2 does provide for such required notice prior to arrest, this statute does not apply in this appeal because Solis is not challenging her arrest, but rather, the *admission of evidence from the search.* Officer Parish's authority to conduct the arrest is not an issue presented on appeal. Therefore, sec-

---

6. Officer Parish testified Solis had always been friendly with him, and when he asked for consent to search, she responded that he could conduct the search.

7. In support of her position that the consent was not voluntary, Solis argues there was no evidence she was aware of her right to refuse consent. However, the officers were not required to tell Solis she could refuse to give consent to search. *See Mathis,* 204 S.W.3d at 258.

8. Solis first testified she "never even got out of [her] vehicle and [she] had a gun to [her]

head." She later testified the officer had the gun drawn on Means, and then testified "[t]here was a lot going on and I just know that there was a gun out. Whether it was on Dan or me I know he was threatening to shoot my dogs, that's the main thing. I don't really know whose head that he had it pointed at at that very moment."

9. Solis and Means were not arrested at the same time. Means was detained after an officer searched him and he voluntarily admitted he had the baggie in his pocket.

tion 195.505 does not support Solis's argument.[10]

We conclude Officer Parish had reasonable suspicion to investigate whether Solis was engaged in the manufacture of methamphetamine. Shortly after officers arrived at the storage unit, Solis gave her voluntary consent to search her vehicle and storage unit. The evidence was therefore, not obtained in violation of Solis's rights under the Fourth Amendment.

Accordingly, we find the trial court did not err in overruling Solis's motion to suppress and admitting evidence at trial that was seized from her truck and storage unit. Solis's Point I is denied.

### Point II: Sufficiency of Evidence

Solis's second point relied on asserts the trial court erred in overruling Solis's motions for judgment of acquittal and entering judgment against her for attempt to manufacture a controlled substance because "the State did not present sufficient evidence to prove each element of this offense beyond a reasonable doubt." She argues the evidence was "insufficient to prove beyond a reasonable doubt that [she] constructively possessed the items in the truck or shed, or that this was a substantial step towards manufacturing, or that she had the purpose and intent to[.]" We disagree.

### Standard of Review

■ " 'We review the denial of a motion for a judgment of acquittal to determine whether the [S]tate adduced suffi-

cient evidence to make a submissible case.' " *State v. Barnes*, 245 S.W.3d 885, 888–89 (Mo.App.E.D.2008) (quoting *State v. Agnew*, 214 S.W.3d 398, 400 (Mo.App. E.D.2007)). In considering the sufficiency of the evidence,

'this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt.' *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). This Court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all inferences to the contrary. *State v. Biggs*, 333 S.W.3d 472, 480 (Mo. banc 2011). 'Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered.' *State v. Latall*, 271 S.W.3d 561, 568 (Mo. banc 2008). In reviewing the evidence, however, this Court cannot supply missing evidence or give the State the benefit of unreasonable, speculative or forced inferences. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). The reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's province to believe all, some, or none of the witness' testimony in arriving at its decision. *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo.App.S.D. 2011).

*State v. Stevens*, 366 S.W.3d 635, 637–38 (Mo.App.S.D.2012).

---

**10.** The search and arrest took place in Crawford County. The task force of which Officer Parish was a member covered six counties, including Crawford County. Arguably, Officer Parish was not outside of his jurisdiction in Crawford County.

Even if Officer Parish had been outside of his jurisdiction, he was not the only officer

involved in ultimately arresting Solis. Officer Swearingin was a member of the Missouri State Highway Patrol. Section 43.190 grants members of the patrol "authority to arrest without writ, rule, order or process any person detected by him in the act of violating any law of this state." § 43.190.

## Analysis

Section 195.211 provides "it is unlawful for any person to ... attempt to ... manufacture or produce a controlled substance[.]" § 195.211.1. "An attempt to commit an offense means a substantial step toward the commission of the offense.... A 'substantial 'step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *State v. Tilley*, 104 S.W.3d 814, 822 (Mo.App.S.D. 2003) (internal quotations and citations omitted). Possession of materials designed specifically for an unlawful purpose or that do not serve a lawful purpose under the circumstances is conduct constituting a substantial step. *State v. Farris*, 125 S.W.3d 382, 387 (Mo.App.W.D.2004).

To show Solis engaged in a substantial step by possessing materials used to manufacture methamphetamine, this Court applies the same standards regarding actual or constructive possession applied to possession cases. *State v. Bacon*, 156 S.W.3d 372, 380 (Mo.App.W.D.2005). The State had to establish that Solis had "conscious and intentional possession of the substance, either actual or constructive," and that she "was aware of the presence and nature of the substance." *Farris*, 125 S.W.3d at 387 (internal quotations and citations omitted). "It is well settled that possession may be proven by circumstantial evidence." *State v. Mickle*, 164 S.W.3d 33, 43 (Mo.App.W.D.2005).

Constructive possession of drugs or the drug components and apparatus "will satisfy the [S]tate's burden [of proof] if other facts exist that buttress the inference of the defendant's requisite mental state." *Tilley*, 104 S.W.3d at 821.

"Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found[.]" *Id.* (internal quotation and citation omitted). The fact Solis was present where the drug components were located *alone,* or in proximity to the contraband *alone,* fails to prove ownership. *Id.* "There must be some incriminating evidence implying that ... the materials or manufacturing process were under [her] control." *Id.* (internal quotation and citation omitted). In determining whether the State has shown additional incriminating circumstances to support an inference sufficient to establish possession, we must look at the totality of the circumstances. *Mickle*, 164 S.W.3d at 44.

Solis argues the State did not make a submissible case because she was in a shared vehicle and near the storage unit,[11] but the State failed to prove who owned the vehicle or who owned or rented the storage unit. However, we find additional incriminating circumstances that, when taken together, support an inference that Solis had knowledge and control over the premises and materials. *See Farris*, 125 S.W.3d at 388.

Here, Solis's close proximity to the materials used in production of methamphetamine, while alone is not sufficient, "is a circumstance that supports an inference of possession." *Id.* When officers arrived, Solis was near the vehicle and the subject storage unit. At the time, the storage unit was open and contained the seized items. In addition, Solis was one of only two individuals in the vehicle and at the storage unit.

11. Solis does acknowledge the storage unit "contained ... items that could be used to manufacture methamphetamine [.]"

Moreover, Solis drove the vehicle from which officers seized a box of pseudoephedrine and a bottle of Heet, both of which are commonly used in manufacturing methamphetamine. In *Farris*, the Western District found sufficient incriminating evidence from which the jury could find appellant guilty of attempting to manufacture methamphetamine; the *Farris* appellant was a passenger in a car containing the meth-related items along with two other individuals. 125 S.W.3d at 386. Here, the evidence points to Solis as the driver of the vehicle and the individual with control over the vehicle containing a box of pseudoephedrine and a bottle of Heet. Regardless, the evidence, at a minimum, establishes Solis purchased a box of pseudoephedrine at Walmart, and minutes later she was inside a vehicle containing a box of pseudoephedrine.

Further evidence of Solis's possession of materials used in the production of methamphetamine was testimony regarding Solis's purchase of pseudoephedrine. Officer Parish testified he was alerted by NPLEx that Solis had just purchased 120 milligrams of pseudoephedrine, and he saw her leave Walmart with a small bag in her hand. The jury could have inferred this bag contained the pseudoephedrine she purchased at Walmart and was later seized from the vehicle she drove from Walmart to the storage unit.

Adding to this incriminating evidence, Solis gave consent to search not only the vehicle, but also the storage unit. Solis's voluntary consent to the officer's search of the storage unit is circumstantial evidence of her constructive possession of the items contained in the storage unit. Office Parish testified the officers seized the following items from Solis's storage unit: lye, mason jars with modified lids, tubing, a transfer hose, a propane tank, and a blue duffle bag containing fertilizer stakes, acid, lye, and tubing. These items could all be used in the manufacture of methamphetamines. The search also revealed matchbooks with striker plates removed. The striker plates are used in the Red and Black methamphetamine manufacturing method.

Given the evidence of additional incriminating factors, and disregarding all evidence and inferences to the contrary, we find there was sufficient evidence from which a reasonable jury could conclude Solis had constructive possession of all the methamphetamine-related items seized, which are commonly used to manufacture methamphetamine, and was aware of the presence and nature of their use. Therefore, the evidence was sufficient for the jury to conclude Solis had committed a substantial step toward the manufacture or production of methamphetamine. Solis's claim in Point II regarding the sufficiency of the evidence to convict her is denied.

Therefore, the judgment and sentence is affirmed.

NANCY STEFFEN RAHMEYER, P.J. and DANIEL E. SCOTT, J., concur.